John W. KING, Individually and as Trustee for the North Dakota Workmen's Compensation Bureau, Plaintiff and Respondent,

v.

RAILWAY EXPRESS AGENCY, INC., a Foreign Corporation; and H. E. Discher, Defendants and Appellants.

No. 7900.

Supreme Court of North Dakota.

Feb. 6, 1961.

Lanier, Lanier & Knox, Fargo, for plaintiff and respondent.

Conmy, Conmy & Feste, Fargo, for defendants and appellants.

STRUTZ, Judge.

The plaintiff, an employee of Dakota Electric Company of Fargo, was in charge of work involved in making certain changes in the street wiring system in the city of Fargo, including the removal of the street lighting heads from old poles and attaching them to new poles. The accident resulting in the bringing of this action occurred when such wiring changes were made at the intersection of Second Avenue, North, and Broadway.

This case previously was before this court. King v. Railway Express Agency, Inc., N.D., 94 N.W.2d 657. The jury, on the first trial of the action, returned a verdict for the defendants, dismissing the plaintiff's action. During its deliberations, without the knowledge or consent of either of the parties, the jury was permitted by the trial court to have a ruler and string for the purpose of attempting to reproduce the way in which the wires hung across the street at the time of the accident. The trial court, on motion by the plaintiff, granted a new trial which was affirmed by

this court on appeal. This court held that the furnishing of a ruler and string to the jury without the knowledge and consent of any of the parties constituted prejudicial error, entitling the plaintiff to a new trial.

The evidence in this case shows that, prior to the making of changes in the wiring, the police of the city of Fargo had stopped traffic along Broadway and had cleared the street of all traffic. The evidence further shows that the plaintiff was aware of the fact that traffic was being controlled by the police, although he had not requested such assistance nor had he arranged for it. After the traffic had been halted by the police, the steel guy wire to which the electric wires were attached was cut and it fell to the street, carrying with it the electric wires. The guy wire and the electric wires then were separated, and the electric wires were again raised for the purpose of reattaching them to the new poles on either side of the street. Plaintiff then made a temporary fastening of the wires on the east side of Broadway and crossed the street and raised the wires to a position about 25 feet above the ground at the point of attachment to the pole on the west side of the street. After a permanent attachment was made of the wires on the west side, the wires crossing Broadway sagged to a height of from 7 to 10 feet above the middle of the street. Traffic then was permitted to resume along Broadway by the policeman who had been directing it.

As the plaintiff was descending the ladder placed against the pole on the west side of the street to which the wires had been permanently attached, he discovered that one of the wires was broken and stopped on the way down to splice it. While the plaintiff was so occupied, and after the patrolman on the street had permitted traffic to resume and, in fact, had departed from the scene of such repair and was about a block away, the defendant, driving a Railway Express Agency truck, proceeded across the intersection in a southerly direction. There was another policeman still at the scene, but he was not directing or in any way controlling traffic. When the defendant Discher, driver of the express truck, proceeded across the intersection, the truck or its visor caught the cable of wires and pulled the plaintiff and the ladder on which he was standing into the street, severely injuring him.

The matter was submitted to a jury after the defendants' motion for directed verdict had been denied. Such motion was made on the ground that there was not sufficient proof of negligence on the part of the defendant Discher and on the further ground that the plaintiff was guilty of contributory negligence. The jury returned a verdict for the plaintiff, and judgment was entered on such verdict. This appeal is taken from the judgment so entered.

The defendants contend:

1. That there is no evidence of actionable negligence on the part of the defendant Discher, and that the verdict therefore cannot stand; and

2. That under the evidence the plaintiff was guilty of contributory negligence as a matter of law.

■ This court repeatedly has held that questions of negligence and contributory negligence ordinarily are questions of fact for the jury unless the evidence is such that reasonable men can draw but one conclusion therefrom. Armstrong v. McDonald, 72 N.D. 28, 4 N.W.2d 191; Leonard v. North Dakota Co-op. Wool Marketing Ass'n, 72 N.D. 310, 6 N.W.2d 576; Fagerlund v. Jensen, 74 N.D. 766, 24 N.W.2d 816; Froh v. Hein, 76 N.D. 701, 39 N.W.2d 11; Huus v. Ringo, 76 N.D. 763, 39 N.W.2d 505; Reservation Motor Corp. v. Mayer, 77 N.D. 431, 43 N.W.2d 537; Olson v. Kem Temple Ancient Arabic Order of Mystic Shrine, 78 N.D. 263, 49 N.W.2d 99; Rettler v. Ebreck, N.D., 71 N.W.2d 759; Pundt v. Huether, N.D., 100 N.W.2d 431.

On the former appeal of this case, this court said:

"Upon the law and the evidence in this case we are satisfied that the is-

sues of negligence, proximate cause and contributory negligence were for the jury." 94 N.W.2d 657, at page 659.

■ Therefore, unless the defendants can point to additional evidence in the case which would distinguish the evidence in this case from that taken at the former trial, the rule laid down on the former appeal must be adhered to. The mere fact that the members of this court, if they had been called upon to pass on the evidence originally, might have reached a different result from that reached by the jury does not mean that reasonable men might not differ on the question of whether, under the evidence, the defendant Discher was guilty of negligence.

On the question of the negligence of the defendant Discher in operating his vehicle, we find no substantial change in the testimony at this trial from that which was given in the previous trial. The evidence shows that the bundle of wires, as they sagged across the street, together formed a "cable" of about an inch to an inch and a half in diameter. This bundle of wires was not hanging out of the defendant Discher's range of vision, as has been strenuously argued by the defendants, but, by plaintiff's undisputed testimony, sagged down to a point from 7 to 10 feet above the pavement. The defendant Discher, as he was driving his truck, was sitting with his eyes approximately 5 feet above the level of the street. Whether a reasonably prudent man would have seen the wires as they hung across the street, under similar circumstances, was a question for the jury. From this state of facts, reasonable men might differ as to whether the defendant Discher was negligent in failing to see the wires under those circumstances. The question of negligence of the defendant therefore was a question for the jury.

We also fail to find any substantial change in the evidence produced on the second trial on the question of contributory negligence of the plaintiff. It is true that the plaintiff testified, on cross-examination, that the wires across the street, after having been permanently attached on the west side, sagged to a point which he estimated to be 7, 8, or maybe 10 feet above the street. From this fact the plaintiff might have realized that, while ordinary cars could pass under the wires at that height, trucks of the legal height allowed in North Dakota at the time, of 12 feet 6 inches, would not be able to do so. Knowing this, it would have been negligence on the part of the plaintiff not to take steps to protect himself from the danger of truck traffic or from the danger of the operation of such trucks upon the street. However, there is evidence in the record that a policeman had controlled traffic while the plaintiff was changing the wires. Although that police officer had not been arranged for by the plaintiff, the jury might well have found that the plaintiff, knowing the officer was on the job, had a right to rely on him to control the traffic and to stop any vehicle of a height which would be unable to pass under the wires at the level at which they had been tied. We believe the question of whether the plaintiff was guilty of contributory negligence was for the jury to determine, under the facts submitted to it. We therefore hold that the defendants were not entitled to judgment as a matter of law.

If the defendant Discher was guilty of negligence proximately causing the injuries to the plaintiff, the jury could find for the plaintiff even though the police officer, who permitted traffic to resume and who left the scene of repair before such repairs were completed, might also have been guilty of negligence. Defendants could have brought such officer into the case as a third-party defendant. They chose not to do so, however. The negligence of the officer would not bar the plaintiff's recovery if defendants also were negligent. Only if the police officer's negligence were the sole cause of the accident would plaintiff's recovery against defendants be barred. The court, by instructing that no recovery could be had against the defendants unless the jury found, from a fair preponderance of the

evidence, that Discher was negligent and that such negligence was the proximate cause of plaintiff's injury, adequately covered the matter.

The appellants contend very strenuously that the trial court erred in refusing to give certain instructions requested by the defendants, and they assign as error the refusal to give such instructions. The instructions which the court refused to give in the form requested were based on the contention and the proposition that there was no duty on the part of the defendant Discher to look up to discover overhanging wires; and that, there being no duty to look up for sagging wires, the defendant was not negligent in failing to see them.

The trial court instructed the jury as follows:

"You are instructed that a motorist approaching and traversing a crossing or intersection will be deemed to have seen what he could and should have seen; he is under a duty to see what is visible and in plain sight. The mere fact that he looked will not excuse him if he did not see what was apparent, since in such case his failure to see constitutes as great negligence, under the law, as though he had not looked at all.

"However, this last rule of law would not apply to the defendant Discher in this case if you find that the wires as they hung across the street in front of him were not visible and in plain sight to such a degree that they would have been observed by an ordinarily prudent person under similar circumstances."

■ This instruction clearly informed the jury that if they found that an ordinarily prudent person, under similar circumstances, would have observed the wires sagging across the street, they could conclude that the defendant Discher's failure to see them was negligence. On the other hand, if they found that, under the same circumstances, an ordinarily prudent person would not have seen the wires, they would

be required to exonerate the defendant Discher of negligence.

Since the conduct of an ordinarily prudent man will vary with the situations with which he is confronted, the jury must be instructed to take the circumstances of the particular case into consideration. Here, the trial court instructed that if such ordinarily prudent person, under similar circumstances, would not have seen the wires, the defendant was not guilty of negligence. We believe the instruction was proper and that it covered the matter fully.

This court repeatedly has held that the refusal to give a requested instruction is not error when the instructions as given fully and fairly cover the issues referred to in the requested instruction. Myers v. Hagert Construction Co., 74 N.D. 435, 23 N.W.2d 29; Reservation Motor Corp. v. Mayer, 77 N.D. 431, 43 N.W.2d 537.

■ The trial court has the duty to fully and fairly instruct the jury on the law governing the issues involved in the trial of a case, and it may refuse requested instructions when the matter already is fully covered by the charge given, even though the requested instruction correctly states legal principles. Stokes v. Dailey, N.D., 97 N.W.2d 676.

Counsel for the defendants contends that the instruction quoted above was erroneous in that the defendant driver's duty, after he had crossed the intersection, was to look ahead on the street and see what was in plain sight on the street, and that he was not obligated to look for any stray wire that might be sagging from the sky.

■ A driver's duty is not limited to seeing only what is in plain sight on the street. He has a duty to see what is in plain sight within the range of his vision, including sagging wires, if a reasonably prudent man, in the exercise of ordinary care, under similar circumstances, should have seen such wires. The trial court's instructions were based on what an ordinarily

prudent person would have observed under the circumstances. If such ordinarily prudent person, under similar circumstances, would have seen those wires as they hung across the street from east to west, then under the trial court's instructions the defendant Discher was negligent in not seeing them. If, on the other hand, an ordinarily prudent person, under similar circumstances, would not have seen the wires, then the defendant Discher was not guilty of negligence in not seeing them. We believe the trial court's instructions were proper and that the matter was adequately covered.

Counsel for appellants cites the Nebraska case of Weaver v. Dawson County Mutual Telephone Co., 82 Neb. 696, 118 N.W. 650, 22 L.R.A.,N.S., 1189, in which the Nebraska court laid down the following rule:

"A person traveling along a road that is crossed by a telephone line is not bound to anticipate danger at such crossings, and is not required to examine or look to see if there is danger before passing under such wire."

Counsel also cites Jacks v. Reeves, 78 Ark. 426, 95 S.W. 781, decided in April 1906. Both of these cases laid down the rule that it is not expected or required of a traveler driving along the middle of a highway to look up to see if perchance a stray telephone wire is in reach of the top of his vehicle.

In each of the cases cited, the situation was far different from the situation here before the court. There is nothing in the cases cited to indicate that the defendant should have been aware of anything unusual. The courts talk about a "stray wire" across the road. In each case such sagging wire was a single telephone wire. In the case here before us, however, the defendant Discher had stopped at a traffic light and had observed a number of men working on the other side of the intersection. The wires which hung from one side of the street to the other together made a bundle of wires from an inch to an inch and a half in diameter as they sagged across the street. Whether such wires were within the range of the defendant Discher's vision as he was driving the truck was a question for the jury. Whether under those circumstances the defendant was negligent in not seeing the wires was clearly a question for the jury under the instructions as given.

Defendants contend that the plaintiff was guilty of prejudicial misconduct when the plaintiff's counsel, over the defendants' objection, was permitted in his closing argument to the jury to use large white sheets of paper, not in evidence, on which sheets figures and calculations showing the plaintiff's claim for damages had been set forth. These sheets showed not only the claim for ambulance services, hospital services, doctor services, and loss of wages, but also showed plaintiff's ideas and beliefs as to the pecuniary value and claim for pain and suffering per week and per year.

■ Counsel is allowed a great latitude in presenting his arguments to the jury, subject to regulation and control of the trial court whose duty it is to confine the arguments within proper limits. Tice v. Mandel, N.D., 76 N.W.2d 124.

It is only where it appears that the alleged misconduct of counsel will deprive a party of a fair trial that relief should be granted by the court. Quam v. Wengert, N.D., 86 N.W.2d 741.

■ There is no doubt that a sheet showing the hospital, doctor, and ambulance expenses and loss of wages could properly be used in the plaintiff's argument on damages, since all of these items had been testified to and the jury had before it specific evidence as to the amounts of these items.

A more difficult question, however, is presented when counsel attempts to evaluate pain and suffering by placing a definite value per week and per year upon the plaintiff's past, present, and future pain and suffering. Damages which can be recovered for pain and suffering always involve uncertainty, and therefore the

courts have required only reasonable certainty on this point. The damages awarded are never the exact sums which will compensate for the injury done. Relief given to an injured plaintiff can be only approximate. But a defendant whose negligence has caused the plaintiff's injury cannot be heard to complain that such damages cannot be ascertained with exactness. The element of uncertainty will not bar the plaintiff's right to recover.

How far may counsel for the plaintiff go in assisting the jury in determining what would be a fair and reasonable recovery for such pain and suffering? This question has been very troublesome for the courts in recent years, and various courts have reached different conclusions. It is agreed that the amount must be fair and reasonable and free from sentimental considerations and must be based upon facts disclosed by the evidence. In arriving at their verdict on damages for pain and suffering, the nature and extent of the injury, the pain and suffering which such injury caused, and the length of such suffering may be taken into consideration by the jury. The jury may also take into consideration the age, health, and the occupation of the injured person as well as his condition of health before and after the accident.

Whether counsel for the plaintiff in his argument to the jury should be allowed to arbitrarily fix an amount for pain and suffering on a per-diem basis is, however, a matter on which the courts have been in hopeless and bitter disagreement. For example, the Supreme Court of New Jersey, in the case of Botta v. Brunner, 26 N.J. 82, 138 A.2d 713, 60 A.L.R.2d 1331, decided in February 1958, stands at the one extreme and bans not only a per-diem measurement for pain and suffering but denies counsel for the plaintiff the right to comment upon the amount prayed for in damages. Delaware likewise refuses to permit a per-diem measurement for pain and suffering. Henne v. Balick, 1 Storey 369, 51 Del. 369, 146 A.2d 394. So does Virginia.

Certified T. V. and Appliance Company v. Harrington, 201 Va. 109, 109 S.E.2d 126. Pennsylvania holds that, in cases where the damages are unliquidated and incapable of measurement by a mathematical standard, statements by plaintiff's counsel as to the amount claimed or expected are not to be allowed because they tend to instill in the minds of the jury impressions not founded upon evidence. Stassun v. Chapin, 324 Pa. 125, 188 A. 111.

Wisconsin, in the very recent case of Affett v. Milwaukee & Suburban Transport Corp., 11 Wis.2d 604, 106 N.W.2d 274, holds that the test for determining damages for pain and suffering is what the jury considers will reasonably compensate plaintiff for pain and suffering, considering its nature, intensity, and extent as disclosed by the evidence, and that a per-diem or per-month basis for computing pain and suffering has no basis in the evidence, or in logical inferences from the evidence, and is pure speculation by counsel. The court then holds that it was error for the trial court to permit counsel for plaintiff to present to the jury a mathematical formula setting forth, on a per-diem basis, the amount determined by plaintiff for damages for pain and suffering.

On the other hand, the holding in the Botta case has not been followed in some courts and has in fact been condemned in others. Ratner v. Arrington, Fla.App., 111 So.2d 82, 89, decided in April of 1959. In the Ratner case, Judge Carroll, speaking for the Florida court, pointed out that this question is at the present time giving courts much concern, and that, in holding that the trial court did not abuse its discretion in permitting counsel to use a chart showing time or unit amounts for pain and suffering, the Florida court was not purporting to make final disposition of this question. Said Judge Carroll:

"Recent holdings, for and against the allowance of such arguments, are not grounded on reasons of sufficient force to compel the decision either

way. The ultimate course of judicial opinion on the point is not yet discernible. Therefore, in approving the practice now we do not purport to foreclose the question. We do, however, now hold that the trial judge did not abuse his discretion in overruling appellants' objections to the use of the chart and the argument of appellee's counsel based on the chart."

Other courts have been critical of the decision in the Botta case. In Continental Bus System, Inc., v. Toombs, Tex.Civ.App., 325 S.W.2d 153, 164, decided in April of 1959, the Texas Court of Civil Appeals, speaking through Chief Justice Massey, said:

"* * * we see nothing improper in arguing a mathematical calculation on the matter of the amount of damages to be awarded for pain and suffering * * *.";

and calls the rule adopted by the courts which follow the Botta case the "by guess and by golly" method.

See also Louisiana & Arkansas Railway Company v. Mullins, Tex.Civ.App., 326 S.W.2d 263, on page 268, where the court says:

"The use of a mathematical formula for illustrative purposes has had the sanction of the Texas courts * * *".

While this precise question has never been considered by this court, we have held that counsel in his argument to the jury may make any legitimate comments on the evidence, but must not give any independent testimony of his own. Hoffer v. Burd, 78 N.D. 278, 49 N.W.2d 282.

In a jury trial, the determination of the amount of the plaintiff's damages for pain and suffering is to be determined by the jury on the evidence introduced into the record. In this case, counsel for plaintiff in his argument to the jury advised the jury what, in his opinion, such pain and suffering was worth. In the course of his argument, counsel exhibited several large white sheets to the jury. On one was marked "Pain & Suffering," and under such heading appeared the following:

| 1st | 16 weeks | @ | $100.00 | 1600 |
| Next | 3 years | @ | 300.00 | 900 |
| Next | 34 years | @ | 300.00 | 10200 |

The plaintiff argues that this constituted a legitimate comment by plaintiff's counsel. There is absolutely no evidence in this record to support these figures. The per-week and the per-year figures found on these sheets are the product of counsel's own imagination.

Counsel for the plaintiff contends that, since his arguments to the jury were not transcribed, the defendants cannot now object to this method of argument. It is true that the record does not disclose the argument of plaintiff's counsel to the jury with reference to the per-week and per-year damages for pain and suffering. The only information before us is contained on the sheet referred to. We would have a much better record if a transcript of the argument of plaintiff's counsel were before us. We believe, however, that, with the sheet before us which was used in the argument and which was marked by the court for identification on defendants' objection to its use, we have a sufficient record to allow us to determine the correctness of permitting counsel for the plaintiff to give to the jury a mathematical formula setting forth, on a per-week and per-year basis, the amount claimed by the plaintiff as damages for pain and suffering.

Sheets showing hospital and medical expenses, loss of wages, and other items of special damages were properly used in the argument to the jury where such amounts listed are based upon evidence in the record. We have a different situation, however, in regard to the use of the sheet setting forth the plaintiff's claim of $100 per week for 16 weeks and $300 per year for 37 years for pain and suffering. Permitting the

plaintiff's counsel to supply such amounts, as was done in this case, in effect allows plaintiff's counsel to testify. A verdict of the jury must be based on findings made by the jury from the evidence; not on findings based on some suggestions of plaintiff's counsel. The danger in permitting the use of such formula is that the jury will substitute counsel's suggested value of such items for evidence. No verdict can be justified unless it is based on competent evidence introduced into the record by witnesses sworn to tell the truth. Thus it is within the province of the jury to determine, from the evidence, what the fair and reasonable value of such damages for pain and suffering should be.

To permit plaintiff's counsel to suggest the amount to be awarded, on a per-diem, per-week, or per-year basis, would allow counsel for the plaintiff to get before the jury figures not based on any evidence in the case. The use of a formula to back up and bolster the plaintiff's claim for pain and suffering, where such formula is not based on any evidence, is, in our opinion, improper.

Counsel for the plaintiff argues that, in this case, the amount of the verdict is justified by the evidence, and points to the fact that defendants' counsel does not challenge the amount of the verdict as excessive. While the size of the verdict is such that we could not say that it shocks the conscience of the court, and while it may not be excessive under the evidence in this case, neither can we say that the size of the verdict was not affected by the use of such figures so improperly given to the jury. Since the definite amounts of per-week and per-year claims for pain and suffering and disability set forth on the sheet used by plaintiff's counsel are not based on any evidence, permitting the use of such formula was error.

Had counsel for the plaintiff merely suggested to the jury that a method by which they might determine damages for pain and suffering was by first determining what such pain and suffering was worth per day, per week, per month, or per year and then told the jury to multiply such sums by the number of days, weeks, months, or years that the jury found, from the evidence, that plaintiff would suffer such pain and suffering, such argument would have been permissible. Here, however, without any evidence to substantiate his argument, counsel gives to the jury amounts that such pain and suffering are worth per week and per year. The jury might well adopt counsel's suggested values of such items as evidence. By doing so, the verdict would not be based on competent evidence in the record.

We hold that the use of such formula, giving definite amounts for various periods of time, was improper. It is within the discretion of the jury to determine, from the evidence, what would be fair and reasonable damages for plaintiff's injuries without having counsel for the plaintiff invade that province by quoting figures not based on any evidence.

The judgment of the district court is reversed and a new trial is granted.

SATHRE, C. J., and MORRIS, BURKE, and TEIGEN, JJ., concur.