Etta **TEEGARDEN**, as surviving wife of I. H. Teegarden, deceased, and Etta Teegarden, individually, Plaintiff and Respondent.

v.

Math **DAHL**, Defendant and Appellant.

No. 8229.

Supreme Court of North Dakota.

Nov. 30, 1965.

Wattam, Vogel, Vogel, Bright & Peterson, Fargo, for appellant.

Nilles, Oehlert & Nilles, Fargo, for respondent.

TEIGEN, Judge.

This appeal is taken by the defendant from an order denying his motion for new trial or a reduction of the verdict in lieu of a new trial. A jury returned a verdict in favor of the plaintiff and against the defendant in the amount of $12,500 for her personal injuries and $17,500 for the wrongful death of her husband. The action stemmed out of an automobile accident on U. S. Highway 10, about eight-tenths of a mile west of West Fargo, North Dakota. It occurred about 5:00 p.m., October 9, 1963. The plaintiff was injured and her husband was killed when a pickup truck, being driven by the plaintiff, turned over after it was struck in the rear by an automobile driven by the defendant. Both vehicles were proceeding in a westerly direction in the north or right traffic lane. The highway was a paved four-lane highway. It had an eight-foot tarred shoulder and two twelve-foot paved traffic lanes for westbound traffic and a similar combination to the south for eastbound traffic. The eastbound and westbound traffic lanes were separated by a median which was four feet wide and about four inches high. The accident occurred on a clear, dry day and the highway was in good condition. There was no other traffic in either of the two westbound lanes in the vicinity of the accident. The plaintiff and her husband had just taken delivery of a new 1964 Studebaker pickup truck at Fargo and were driving it to their home at Hunter, North Dakota. The plaintiff was driving. Her husband sat beside her. She testified she was driving from 30 to 35 miles per hour in the right westbound lane but had no recollection of her vehicle being struck in the rear or the resulting accident.

The defendant and his wife were returning to their home in Bismarck from Fargo where the defendant had attended a dairy industry conference. He was Commissioner of Agriculture and Labor for North Dakota. He was driving a 1962 Buick Electra Sedan. He testified he was driving from 55 to 60 miles per hour in the right westbound lane when he saw the plaintiff's vehicle, also in the right lane, a distance of from 40 to 80 rods ahead. He applied the brakes as he approached and, according to the testimony of the highway patrolman who investigated the scene after the accident, laid down tire skid marks for a distance of 115 feet on the left and 110 feet and six inches on the right before impact.

The defendant testified that, when he braked, his wife, sitting in the front seat by his side, slid off the seat and on to the floor below the dash of the car. He realized he was unable to stop his car in time to avoid a collision and attempted to turn left. The right front of the defendant's automobile struck the left rear of the plaintiff's pickup truck.

According to measurements taken by the highway patrolman, both vehicles made tire marks on the pavement from the point of impact. They ran together for a distance of 48 feet where they separated, the defendant's tire marks continuing in a curve to the left or south side of the highway and the plaintiff's continuing to the right or north side. The defendant's automobile crossed the left westbound lane, the four-foot median, the two eastbound lanes, and the south shoulder, stopping in the south ditch. The defendant testified he had released his brakes after the vehicles sepa-

rated and accelerated to cross the highway and drove into the ditch as a safety measure. The plaintiff's pickup truck struck a frontage road sign located on the north shoulder. The force broke two six-inch by six-inch wooden posts imbedded four feet in the ground to which the sign was attached and the vehicle turned over on its top near the shoulder of the highway where it came to rest. The plaintiff's husband died instantly from a severed spinal cord caused by a fracture of the third cervical vertebra. The plaintiff was injured and the defendant and his wife were uninjured.

The only material conflict in the evidence pertaining to the occurrence of the foregoing events involves the speed of the vehicle driven by the plaintiff. She testified she was driving from 30 to 35 miles per hour and the defendant testified he was of the opinion the vehicle driven by the plaintiff was stopping or was stopped but that he could not swear to this as a fact. The testimony of the defendant's wife was negative on this question. She was not looking forward because the sun was low and bright. She did not see the other vehicle before the accident. There was one eye witness to the accident. He was going east about 200 feet or thereabouts west of the scene; however, he did not see either vehicle until after the impact. He saw the pickup truck and testified that "it seemed to raise up in the rear and kind of move to the left, the rear end moved to the left toward the center line and just off into the ditch, tipped over and run into the sign post there." He did not see the defendant's car until it came from behind the pickup. He saw it cross the highway in front of him and stop in the south ditch. This eye witness had a passenger but, according to the passenger's testimony, he did not see the vehicles until after the accident had occurred.

The defendant has assigned numerous specifications of error. These specifications may be classified in five general categories: (1) errors in law on the question of liability; (2) errors in law on the issue of wrongful death; (3) errors in law on the issue of personal injury; (4) general assignments of errors in law; and (5) reasons advanced on issue of wrongful death and personal injury, going to the question of sufficiency of the evidence to sustain the amounts of the verdicts, and passion and prejudice.

We will first consider the assigned errors on the issue of liability.

The defendant has assigned as error the court's failure to instruct that stopping on the paved or main-traveled portion of the highway constitutes evidence of negligence. The defendant requested such an instruction which was refused. Defendant argues the jury was entitled to consider the requested instruction for the reason that the evidence permitted a finding that the plaintiff had stopped the pickup truck on the main-traveled part of the highway when it was practical to have parked or stopped the vehicle on the shoulder.

The only evidence in the record on this question is the testimony of the defendant. He testified:

"I observed the truck on the road and I assumed it was moving but I can't say that it was moving nor can I positively swear it was standing still but to me it appeared it had come to a stop, or did stop.

 * * * * * *

"My judgment is that it had stopped. As I said before I can't positively swear that it was standing still completely but by all aspects of it to me it was that it was standing still."

Counsel argues the defendant's testimony, plus the photographs of the scene in evidence, was sufficient to have the issue considered by the jury and, if the jury found from the evidence that the plaintiff had stopped the pickup truck on the main-traveled portion of the highway, it would constitute evidence of negligence on her

part in support of the defendant's affirmative defense that she was contributorily negligent.

The plaintiff testified positively that she had not stopped the pickup truck; that the truck was new and she and her husband had just taken delivery of it from the dealer; that the dealer instructed her not to drive the truck more than 30 miles per hour to start with and that, at the time of the accident, she was driving between 30 and 35 miles per hour. The defendant's requested instruction reads as follows:

"You are further instructed that the regulation regarding the stopping, standing or parking of a vehicle on the highway provides as follows:

'Upon any highway outside of a business or resident district, no person shall stop, park or leave standing any vehicle whether attended or unattended, upon the paved or main traveled part of the highway, when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event, an unobstructed width of the highway of not less than 12 feet opposite a standing vehicle shall be left for the free passage of other vehicle. This section shall not apply to the driver of any vehicle which is disabled while on the paved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position.' "

This requested instruction incorporates most of the provisions of Section 39–10–47, N.D.C.C. Omitted from it is the statutory provision that follows the requirement that "an unobstructed width of the highway of not less than twelve feet opposite a standing vehicle shall be left for the free passage of other vehicles * * *." It states:

"and a clear view of such stopped vehicles shall be available from a distance

of two hundred feet in each direction upon such highway."

Why one provision was included and the other excluded, we are not told. It is undisputed that in the case at bar both requirements were satisfied. This was a double-lane highway, each lane being twelve feet in width. The plaintiff's vehicle was in the right lane. The terrain was flat and there was no other traffic. The defendant testified that he saw the plaintiff's pickup truck 40 to 80 rods (660 to 1,320 feet) away as he approached it from the rear. The pickup was not unattended nor was it left standing. Thus the only provision of the statute applicable in any way, if the defendant's testimony is sufficient to raise a fact issue, is that no person shall stop or park any vehicle upon the paved or main-traveled part of the highway. The rest of the statute is not applicable under the undisputed evidence.

■ We do not deem defendant's testimony sufficient to constitute evidence of negligence under the facts in this case. There was ample passing room in the twelve-foot passing lane and there was a clear unobstructed view for a distance of more than 200 feet in the direction from which the defendant was coming. There was no other traffic. The day was clear and the visibility was good. The defendant, according to his testimony, saw the pickup truck a distance of from 660 to 1,320 feet before impact. The defendant does not testify as to a fact. His testimony is merely an opinion with no basis in fact and states a conclusion to which he testified he could not swear. He testified he observed the truck and "assumed it was moving." He does not state, and there is no evidence, on what he bases his judgment that it had stopped. Neither does he state whether his opinion was formed at the time of the accident or whether it was a conclusion he came to after the accident as the result of meditation. The trial judge refused the requested instruction. He saw and heard the witness and the cold trial record before us

does not disclose all of the varied factors he may have considered. We do not consider it the function of this court to override the trial court in its decision not to give the requested instruction.

The photographic evidence to which the defendant alludes in no way establishes that the pickup truck was stopped. Some of these photographs show certain skid marks, some of which were made by the plaintiff's pickup truck. The only explanation in the record for the skid marks was given by the testimony of the highway patrolman. The explanation given is that the wheels of the pickup truck were turning more slowly than its speed after it was hit by the defendant's vehicle, which propelled it forward and to the left. The marks, in his opinion, were caused by the wheels dragging and a sliding to the left, resulting in a "side scraping."

We do not feel the evidence of record warrants the requested instruction. The burden of proof was on the defendant to establish his affirmative defense by a fair preponderance of the evidence. We find the state of the proof is such that a jury finding of contributory negligence, based on the evidence alluded to, would, on appeal, be set aside on the ground of insufficiency of the evidence to justify such a verdict. This evidence is clearly insufficient to justify a finding on the part of the jury that the plaintiff was contributorily negligent. We find it does not present an issue of fact for the jury.

Instructions should be confined to the issues presented by the evidence and instructions on issues or matters not warranted by the evidence should not be given. The refusal to give an instruction which is inapplicable under the evidence is not error. Bolen v. Dolph, 62 N.D. 700, 245 N.W. 259; Killmer v. Duchscherer, N.D., 72 N.W.2d 650; Lake v. Neubauer, N.D., 87 N.W.2d 888; Austinson v. Kilpatrick, N.D., 105 N.W.2d 258; Chandler v. Hjelle, N.D., 126 N.W.2d 141. If it is found that such an instruction is calculated to mislead the jury, it constitutes reversible error. Grandin Inv. Co. v. Hartung, 49 N.D. 364, 191 N.W. 783; Foster v. Dwire, 51 N.D. 581, 199 N.W. 1017, 51 A.L.R. 21.

On the question of applicability of the instructions, the rule, as laid down in 53 American Jurisprudence, Trial, Section 573, page 451, states:

"The general principle is that instructions given by the trial court * * * should state the law as applicable to the particular facts in issue in the case at bar, which the evidence in the case tends to prove; mere abstract propositions of law applicable to any case, or mere statements of law in general terms, even though correct, should not be given unless they are made applicable to the issues in the case at bar."

We said in Mousel v. Widicker, N.D., 69 N.W.2d 783, at 790:

"Instructions of the trial court must be viewed in the light of the evidence on which they operate."

An instruction should not be given stating a hypothesis or presenting a theory having no basis in the evidence. We find the court did not err in refusing to give the defendant's requested instruction numbered six.

Defendant assigns as error the failure to allow testimony by the seller of the pickup truck relative to the shifting sequence or pattern of the pickup truck. On cross-examination, the plaintiff had testified that the gear-shifting pattern was standard and that a down shift placed it in low gear. The defendant in his main case called the seller of the vehicle. He testified that the pickup truck had a four-speed transmission. He was then asked to explain the shifting sequence of the various gears. The plaintiff objected on the grounds that it is an attempt to impeach a witness on a collateral matter which had been elicited by the defendant on cross-examination, and that it is

irrelevant and immaterial. The court sustained the objection and the defendant made an offer of proof out of the presence of the jury to the effect that the witness would testify low gear is to the left and forward, second gear is to the left and down, third gear is to the right and forward, fourth gear is to the right and down, and that reverse is way over to the left of the first gear and up. The offer was rejected.

■ The defendant now argues the evidence was material as direct evidence of a fact and for impeachment purposes. He argues the denial was error because it prevented the defendant from submitting circumstantial evidence bearing on plaintiff's inexperience and explaining a possible reason for the vehicle stopping on the highway. There is no credible evidence of record that the plaintiff was stopped or that she had any difficulty in driving the pickup truck. It is common knowledge that an empty vehicle can be started forward in second gear. Starting this vehicle in second gear, the shifting sequence was standard. We find the objection was properly sustained and the offer of proof properly rejected. The subject matter was collateral and irrelevant to the issue and has no probative value to establish the plaintiff was stopped on the highway. She had driven the pickup truck eight-tenths of a mile from the western edge of West Fargo where the accident occurred. In addition thereto, she had driven the pickup truck from the seller's place of business, located in the city of Fargo, to and through the city of West Fargo, most of which was city driving. She had stopped the pickup at a truck stop in West Fargo and had something to eat. At the time of the accident, she was proceeding in a rural area. The plaintiff must have started and stopped the pickup truck many times in obedience to city traffic signals and controls. The testimony was not admissible for impeachment purposes.

"Answers of a witness, on cross-examination, to questions upon irrelevant or immaterial matters, are con-clusive against the examiner, and it is error to receive, over objection, evidence for the sole purpose of contradicting such answers." Schmidt v. Stone, 50 N.D. 91, 194 N.W. 917.

■ Furthermore, it was clearly irrelevant as circumstantial evidence bearing on the question of contributory negligence, in view of the total absence of evidence, that she was stopped or had any driving or shifting problem.

■ Defendant next assigns it was error to permit the plaintiff to testify over his objection that she did not stop on the highway just before the accident. He argues that, because she does not recall the impact when the defendant's automobile struck the pickup, she was not qualified to testify as to what she was doing just before the impact because her answer would be a conclusion. There is no merit to this argument. On cross-examination by defendant's counsel for the purpose of laying a foundation for the objection, she testified she remembered driving on to the highway from the truck stop and driving on the highway up to the place where the accident happened but that she did not recall the impact or what occurred after it. She had also testified that she was driving from 30 to 35 miles per hour. No attempt was made to go into what happened after the impact, only before, and it appears to us she was asked questions and gave answers only in areas in which she had knowledge of facts. There was no error here.

The court instructed the jury concerning certain traffic regulations provided by our statutes. The first group of traffic regulations given was concerned with speed, control, and lookout. It was followed by an instruction that a violation of any of the foregoing regulations constitutes evidence of negligence, which may be considered by the jury if it was also a proximate cause. The court then instructed on another group of traffic regulations. These concerned stopping, sudden decrease in speed, driving

less than the normal speed, and overtaking another vehicle. The court did not follow with another instruction that a violation of these regulations also constitutes evidence of negligence. Defendant assigns this as error prejudicial to him because the latter group contained the regulation concerning the requirement to drive a slow-moving vehicle in the right-hand lane. He argued that this fact, coupled with the failure to instruct on the regulation pertaining to stopping on the highway, was basic to the defendant's claim that the plaintiff was contributorily negligent. He argues one standard was applied to traffic regulations applying to the defendant (evidence of negligence) and no standard as to the regulations was applicable to the plaintiff.

■■■ We have held earlier in this opinion it was not error to have denied the requested instruction on stopping. We now find the evidence does not support an instruction concerning the requirement to drive a slow-moving vehicle in the right-hand lane. There is no conflict in the evidence and nowhere does the defendant maintain that the plaintiff at the time of or before the accident was driving in any other than the right-hand traffic lane. The defendant in arguing the next specification makes it clear he is of the opinion that because the highway had an eight-foot tarred shoulder, the jury may have been justified in finding it was evidence of negligence not to drive a slow-moving vehicle on the eight-foot tarred shoulder. This is not a proper construction of the statute (Section 39–10–08(2), N.D.C.C.) covered by the instruction. It provides any vehicle proceeding at less than the normal speed of traffic at the time and place and under the conditions then existing shall be driven in the right-hand lane then available for traffic, or as close as practicable to the right-hand curb or edge of the roadway, etc. Section 39–01–01(46), N.D.C.C., defines "roadway" as that portion of the highway improved, designed, or ordinarily used for vehicular travel, exclusive of berm or shoulder. Subsection 48 defines a "laned roadway" as one divided into two or more clearly marked lanes for vehicular travel. Thus in view of the established and uncontroverted fact that the plaintiff was driving the pickup truck in the right-hand travel lane, the evidence does not permit a finding by the jury that the statute was violated. For this reason the defendant was not prejudiced by the failure to instruct that it was evidence of negligence as there was no issue presented by the evidence involving the regulation.

Instructions should be confined to the issues presented by the evidence. Pease v. Magill, 17 N.D. 166, 115 N.W. 260; Chandler v. Hjelle, supra.

■■■ The next assignment has been answered. The defendant assigns it was error to exclude evidence of the normal speed of traffic on this highway. He argues he should have been permitted to establish that the plaintiff was driving less than the normal speed to support a finding that plaintiff violated a traffic regulation of not driving in the "black-topped lane" which is nearest the outer edge of the roadway as defined in Section 39–10–08(2), N.D.C.C. It is clear this is not a six-lane highway. It is a four-lane highway with two twelve-foot one-way lanes provided for traffic in each direction. Contiguous on either side of the traveled way was an eight-foot tarred shoulder. Title 39, N.D.C.C., does not define a shoulder but Section 24–01–01.1(41), which pertains to the State highway system, states:

" 'Shoulder' shall mean the portion of the roadway contiguous with the traveled way for accommodation of stopped vehicles, for emergency use, and for lateral support of base and surface courses."

Section 39–10–08(2), supra, does not provide a vehicle proceeding at less than the normal speed shall travel on the shoulder. There was no error.

The next group of specifications alleged to be error deals with the wrongful-death aspect of the trial.

The defendant complains the court allowed evidence of double funeral expenses. There were two funeral services— one at Hunter, North Dakota, where the plaintiff and her husband had lived for many years, and also one at Orrich, Missouri, where the plaintiff and defendant formerly lived before moving to North Dakota, and where they planned to return the day following the accident. The body was interred at Orrich, Missouri. For these reasons two funeral homes were engaged; however, the funeral home that rendered services at Missouri billed the North Dakota funeral home for its services and the North Dakota funeral home submitted one billing to the plaintiff for the total charges. This billing was introduced in evidence. A second billing of the charges made by the Missouri funeral home was also introduced in evidence over the defendant's objection; however, the statement is directed to the North Dakota funeral home and does not purport to bill the plaintiff. The North Dakota funeral home statement is a detailed statement showing funds advanced by it to the Missouri funeral home for their services and states the statement of the Missouri funeral home was attached as if incorporated by reference. The two statements read together do not show double funeral expenses and we cannot conceive that they would confuse the jury. The Missouri statement is merely a confirmation that the charges made by the North Dakota funeral home for funds advanced are correct. The defendant in his brief cites authority that funeral expenses in a wrongful death action must be reasonable, proper, and necessary, but he makes no claim the amount is unreasonable or not necessary. His only argument is that double funeral expenses are improper as a matter of law but we find his contention is not sustained by the evidence. It does not support a finding of double funeral expenses.

Defendant contends substantial evidence was erroneously admitted concerning loss of companionship and society. In his argument he refers to specification of error numbered two. This specification assigns as error the admission of certain testimony by the son of the deceased and the plaintiff in this action. He was asked: "What were the plans of your father and mother?" The objection made was that it calls for a conclusion and is hearsay. The objection was overruled. He testified his father had closed a transaction selling his farm land in North Dakota on the morning of the accident and, on the same day, his father and mother had gone to Fargo where they purchased a pickup truck. The next morning they had planned to go to Orrich, Missouri to buy a little piece of land located near relatives. They were then going to return to Hunter, North Dakota, and sell their home and move to Missouri where they would build a new home on the land which they planned to purchase. He testified the family originally came from Missouri, that his father had brothers and sisters living in the area where he wished to purchase the land, and that his sisters (the deceased's daughters) also lived there. The defendant now argues for the first time that it was prejudicial error to admit this testimony because it constitutes evidence in support of damages on account of loss of society and companionship.

We have examined the testimony and find the plaintiff had testified to these plans without objection and that the testimony of the son corroborated her testimony. Furthermore, it does not appear to us as being in support of damages on account of loss of society and companionship but in support of damages for pecuniary loss, particularly when coupled with the plaintiff's additional testimony of further plans that the land to be purchased in Missouri would be utilized for agricultural purposes, the raising of watermelons. The deceased had raised watermelons in Missouri before coming to North Dakota. It was an area in which he had previous experience. The testimony throws light on the deceased's expectation of life and, therefore, was admissible in support of plaintiff's claim of pecuniary loss as a result of her

husband's premature death by defendant's wrongful act. Umphrey v. Deery, 78 N.D. 211, 48 N.W.2d 897.

Furthermore, the court charged the jury: "You are instructed that under the statute awarding damages for wrongful death damages are to be awarded only for pecuniary loss and may not be awarded for loss of society and companionship or in the way of solatium \* \* \*." We find there was no error in the admission of the testimony and, in view of the instruction given by the court, it could not be properly considered by the jury as being in support of damages for the loss of society and companionship. It was admissible for the purpose of throwing light on the prospective advantages to the plaintiff of the deceased's continued life and is in support of proof of pecuniary loss. Umphrey v. Deery, supra. The plaintiff and the deceased were husband and wife, living together as such, and naturally their plans for the future would involve both of them.

 The defendant also contends that, because of the arrangement of the instructions, it is fair to conclude that they tended to mislead and confuse the jury. Specifically he argues that the court's general instruction on detriment may have been construed by the jury to permit an award of damages for the loss of society and companionship in the wrongful death case. We do not think so. Although the order in which various charges were placed in the instruction is not a model arrangement, nevertheless the court made it clear and explicit that damages could not be awarded on the wrongful death claim for loss of society and companionship or in the way of solatium.

The defendant challenges the order or arrangement of various instructions contained in the charge. He does not challenge the correctness of individual instructions but specifies that because of the poor arrangement it warrants a finding that they were misleading and confusing to the jury so as to adversely affect his substantial rights and, therefore, prejudicial. He argues the large verdict warrants this conclusion. We said earlier the order in which the various instructions were placed in the charge is not a model arrangement but, reviewing the entire instructions, we do not feel them misleading or so confusing as to warrant a granting of a new trial. We have here two causes of action arising out of the same accident. They were tried together. One was for plaintiff's personal injuries and the other for the wrongful death of the plaintiff's husband. The measure of damages is different in each of these causes. The instructions on the measure of damages for personal injury and for wrongful death are called to our attention. The defendant argues that because of the confusion certain rules pertaining to personal injuries may well have been applied to the wrongful death case.

 We find the general rule as follows:

"The arrangement of the instructions rests in the discretion of the trial court. At all events, a judgment will not be reversed because of an illogical arrangement if the instructions as a whole correctly state the law and if it appears from the whole record that the jury was not misled." 53 Am.Jur., Trials, Sec. 561.

 Our examination of the instructions in the instant case and the whole record certified to us on appeal does not lead us to the conclusion that the jury was misled. We hold there was no prejudicial error shown.

 Error is also assigned upon the admission of testimony of the plaintiff relating to certain income of the deceased, during the immediate past years, from 80 acres of land and the sale of sheep. He argues this is contrary to the rule stated in Wilson v. Oscar H. Kjorlie Co., 73 N.D. 134, 12 N.W.2d 526, and Emery v. Midwest Motor Express, 79 N.D. 27, 54 N.W.2d 817. The facts in the two cases cited readily distin-

guish them from this case. In the Wilson case, the plaintiff was engaged in three business activities in which he was assisted by his wife and certain employees. The plaintiff's testimony was to the effect that he received an average net income from his several business activities over a period of ten years prior to the accident of $2,000 to $3,000 per year, and that as a result of the injuries sustained he was unable to perform his work and his income was lost entirely. The Emery case is similar. It also involves personal injuries. The plaintiff was engaged in the excavating business in which he employed men to operate machines and work on various jobs. It was the testimony of the plaintiff that, because he was unable to perform the work which he formerly performed, his business suffered a loss because he could not replace himself with anyone and estimated the loss at $10,000 to $12,000. The court in each of these cases held the amount of income could not be shown without proper preliminary facts, such as character and magnitude of the business, the capital employed, the employees hired, and the quality and the amount of service rendered by the employees, as well as the plaintiff himself.

In this case there is no attempt to compare income or amounts received from the sale of farm products by the deceased after his death with that prior thereto. The testimony here did not relate to profits or income resulting from services performed by others than the deceased and from capital investment. The farm produce sold resulted in the main from the personal efforts and labor of the decedent. The evidence was not offered for the purpose of proving possible or probable future profits from the farm activities in which the deceased had been engaged. He had sold the farm land on the day on which he was killed. We held in Umphrey v. Deery, supra, that the plaintiff might show the character and habits of the deceased, his habits of industry, his mental and physical capacity, his disposition to frugality, his earning capacity, and what he had been do-

ing and was doing to provide for his family. In the syllabus of that case we said:

"In an action to recover damages for wrongful death evidence as to the income of the deceased, during the year immediately preceding his death, from farm products raised by the deceased and resulting principally from his own labor and efforts was admissible to throw light on the quality and value of the earning capacity of the deceased."

The evidence establishes the plaintiff knew what the income was from the 80 acres of farm land her husband farmed and also from the sale of lambs which he raised. The evidence clearly had a tendency to show the habits of the deceased, his mental and physical capacity, his earning capacity, and the use he made of available opportunities. There was no error in admission of the evidence in question.

We now come to the assignments of error that pertain to damages for plaintiff's personal injuries sustained as a result of the accident. The defendant has grouped his assignments into six categories for the purpose of argument. He claims the combination of these errors induced the jury to find a very high verdict ($12,500 for a woman 69 years old) and that this constituted prejudicial error, even though the verdict may not be found to be excessive as a matter of law.

These assignments succinctly stated are that it was error to: (1) admit the doctor's testimony relative to the plaintiff's blood pressure before the accident; (2) admit plaintiff's testimony as to the cost of insulin for treating a pre-existing condition; (3) admit doctor's testimony pertaining to speculative possibilities concerning treating plaintiff's shoulder injury; (4) list certain claimed future expenses for medicine, therapy, and travel as special damages in charge to jury, and then failed to instruct that future damages must be proved with reasonable certainty; (5) admit and permit the use

of certain color photographs of plaintiff after accident; and (6) permit use of chart in argument to jury which itemized general damages as though provable as special damages and which also itemized claimed future medical expenses.

We will consider these assignments in the order stated above.

The doctor was permitted to testify that the normal blood pressure of the plaintiff prior to the accident was 140/90 milligrams mercury. The evidence was received without objection. The doctor was asked on direct examination if he knew what the plaintiff's blood pressure was before the accident. He answered that he did but was not permitted to answer as it was developed on cross-examination permitted for the purpose of laying a foundation for an objection that the doctor had not personally taken the blood pressure of the plaintiff. The doctor was then asked if he could testify as to what the normal blood pressure of the plaintiff would be prior to the accident. There was no objection to this question and he answered as stated above. This was basic to the testimony that followed which was to the effect that the plaintiff had a very high blood pressure following the accident (240/140 mm), that she was treated for high blood pressure, that it had now been reduced to an average of 160/90 or 170/90, and that the systolic reading is about ten points higher than normal limits and this condition, if it continues, may cause damage to her vital organs.

 It appears the defendant's claim to error is that foundation was laid for the doctor to testify that, in his opinion, the plaintiff's blood pressure was aggravated by the accident. The foundation evidence to which the defendant now objects and assigns as error was not objected to at the time of trial and its admission therefore was not error. However, there is also additional foundation evidence. The plaintiff testified as to her good condition of health prior to the accident. The doctor testified that, in his opinion, an injury to

the plaintiff's brain affected the center of the brain stem which controls blood pressure and, in his opinion, the condition was permanent. He testified she would probably have to take medication in the form of blood pressure reducing pills for the rest of her life. We believe there was ample foundation to admit the doctor's testimony that, in his opinion, the plaintiff's blood pressure was aggravated by the accident.

 The second assignment that it was error to admit plaintiff's testimony as to the cost of insulin is premised on the background of the doctor's testimony that her pre-existing condition of diabetes was aggravated as a result of the accident and was without foundation because the doctor admitted on cross-examination that in an older person the requirements for insulin may change. The plaintiff's insulin requirements were increased from approximately 32 units per day to 45 units per day and the testimony relative to cost was introduced for the purpose of placing in the record evidence on which a computation could be made showing a 43% increase in the cost of insulin that would necessarily be used over the period of her life expectancy. The plaintiff's testimony of the cost of insulin was not introduced for the purpose of standing as proof of the cost of treating a pre-existing condition but of treating the aggravation of a pre-existing condition caused by the accident. We see no error here.

 We find that the third assignment that it was error to admit testimony of a medical expert covering future treatment of plaintiff's shoulder injury is without merit. The plaintiff's injury was diagnosed. It consisted of internal injury to the shoulder which caused a scarring around the joint, a shortening of the muscles, tendons, and some of the ligaments. It was caused by a contusion or trauma suffered in the accident. When the medical specialist examined the plaintiff, he testified the injury had developed into what is commonly referred to as a "frozen shoulder." This

means that the motion of her arm and shoulder was limited. After testifying as to the diagnosis and cause, the witness was asked to state what he prescribed as treatment. He testified he would prescribe physiotherapy first and then cautioned that plaintiff may not respond to physiotherapy. He was then asked what he would prescribe if she did not respond to therapy. The medical specialist was then cross-examined for the purpose of laying a foundation for an objection to the above question. He testified that plaintiff's condition should clear up to a certain extent by therapy but that, out of a given number of people, a certain number will not respond and that he could not state whether plaintiff will respond. The defendant then objected to the question on the ground of lack of foundation and that it was speculative. The objection was overruled and the witness was permitted to testify. He testified that if physiotherapy did not bring the desired results, he would recommend a series of more strenuous treatments with a final alternate of surgery. The witness was also examined as to the length of time he would recommend physiotherapy be continued, the number of treatments, and the average cost of each. This evidence was introduced in support of claimed special future damages. No evidence was introduced of the cost of the more serious treatments or surgery. Thus the other procedures, if therapy is unsuccessful, do not support a finding of special future damages.

The defendant argues that future damages must be proved with reasonable certainty and not on the basis of possibilities. He cites Vaux v. Hamilton, N.D., 103 N.W.2d 291, in support of his argument. However, this case is not applicable. We held it was error to ask the medical expert with reference to future developments of pain and suffering to state "with a reasonable degree of medical certainty that there is a distinct possibility that this might happen?" We held the question in the form asked was objectionable because it asked that the opinion be based on mere possibilities. In this case the question calls for a statement of the order in which different treatments are prescribed for a patient suffering from a known malady for which there is more than one type of treatment and which treatments are used in sequence depending upon the results. Treatments had not been commenced. No attempt was made to introduce opinion evidence that the subsequent and more serious types of treatments or surgery were a probability. We find that foundation was established and the testimony was not speculative. The question merely called for a statement of fact as to the course of treatment normal to the circumstances. The fact that the testimony relates to the future does not necessarily render it objectionable as opinion. It was a mode of expressing past experience as to a known condition. This is not error. 32 C.J.S. Evidence § 439.

Error is assigned on the instructions relative to special damages. The instructions were in writing. There was no request for further instructions. The court listed the claimed special damages, including claimed future expenses. Defendant now argues it was error for the court to list the claimed future expenses and to fail to instruct that they must be proved with reasonable certainty. He argues this resulted in a proportionately larger verdict for general damages because it is reasonable to assume that had the claims for future expenses, such as for blood pressure pills, insulin, and physical therapy been omitted from the charge and the jury instructed that future medical expenses must be proved with reasonable certainty, the verdict for general damages would have been proportionately less. In other words, defendant wants us to find that the omission amounts to a misdirection because it is reasonable to assume the verdict for general damages is larger than it would otherwise have been had the court given the instruction he now for the first time suggests.

A single verdict was returned; special and general damages are not sepa-

rately shown. It would be presumptuous for us to speculate what portion of the verdict is for special damages and what portion is for general damages. The trial court gave the usual instructions on detriment, the jury's function in finding damages, and burden of proof. We have examined all of the instructions given and are agreed there is no merit in the contention any error prejudicial to the defendant was made by the court in instructing the jury. We do not pass on whether it would have been error to have refused to give an instruction of the nature the defendant now suggests. The contention that the trial court erred in not giving such instruction does not appear to have been presented to the trial court and is raised for the first time in this court. In these circumstances the defendant is in no position to predicate error upon the failure to give the instruction contended for.

It is the settled law in this State that:

"In the absence of request for an appropriate instruction the failure of a trial court to instruct the jury does not constitute prejudicial error. In such case failure to instruct can be urged as error only if in the light of the evidence the nondirection constitutes misdirection." Umphrey v. Deery, supra, and numerous cases cited therein.

Five color photographs of the plaintiff, taken shortly after the accident, were introduced in evidence over the defendant's objection. Objection was made on the ground that they had no probative force and were introduced to inflame the jury. Later in the trial the photographs were used by the doctor as an adjunct to his testimony of the plaintiff's injury for illustrative purposes over defendant's objection that they were not necessary as an aid to his medical explanation. Finally, at the close of the trial, the court denied the defendant's request that they not be given to the jury to be taken by them into the jury room. The color photographs are in evidence. We have viewed them and have read the testimony introduced relative to them and find that the trial court has not abused its discretion.

We said in Schnell v. Northern Pacific Railway Co., 71 N.D. 369, 1 N.W.2d 56, at 62:

"The rule with respect to the admission of photographs is a pliable one. Whether or not they shall be admitted is left largely to the discretion and judgment of the trial court."

This is the general rule. 20 Am.Jur., Evidence, Sec. 727. The same rule applies to color photographs.

"Color photographs are admissible as any other photographs if they correctly portray the subject matter, do not convey false impressions, and if their probative value is such as to outweigh the possibility of undue prejudice from such circumstances as their gruesome character. The matter rests largely in the discretion of the trial judge." Vol. 3, Jones on Evidence, Sec. 630, p. 1198.

The last assignment pertaining to damages for personal injuries is that the court erred in permitting plaintiff's attorney to use a certain chart in connection with his argument to the jury. Objection was made to the use of the chart as the plaintiff's attorney prepared to start the argument. The chart was hand printed upon a white-faced cardboard approximately two and one-half feet by three and one-half feet. It was divided into two parts and was separated by a broken line, one part covering bodily injury and the other wrongful death. Under the heading "Bodily Injury" were listed special damages consisting of doctors' expenses, hospital, ambulance, drugs to date, blood pressure pills, insulin, physical therapy, and travel. An amount followed each, the total of which equalled $2,618.43. This was designated "Specials." There was also

placed on the chart the figure of $17,500. Below this figure was placed $2,618.43 which was subtracted from $17,500 and showed a balance of $14,881.57 designated "General." The figure $17,500 is the amount prayed for in the plaintiff's complaint in her personal injury action.

The defendant argues that the vice of a chart which lists alleged general damages and also lists the alleged special damages is that the plaintiff's attorney was permitted to equate his opinion on general damages with proven medical and hospital expenses. The arguments to the jury were not taken by the court reporter. There is no record which establishes that the plaintiff's attorney in his argument to the jury equated general damages with proven medical and hospital expenses. In the absence of a record of the argument, we cannot say that the attorney for the plaintiff made an improper argument which could be considered as being prejudicial to the defendant. The defendant, in support of his argument, cites King v. Railway Express Agency, Inc., N.D., 107 N.W.2d 509, in which we held it was error to use in the argument sheets of paper showing a mathematical formula setting forth the claim for pain and suffering on a per week or a per year basis where there was no evidence to substantiate the figures used. He argues that while in this case a per diem argument was not used, yet, ingeniously, plaintiff's counsel sought to create the same kind of effect on the jury as a per diem argument by incorporating counsel's idea of general damages with the medical and hospital bills.

Counsel is allowed great latitude in presentation of argument, subject however to the regulation and control by the court whose duty it is to confine arguments within proper limitations. Where the argument is not made a part of the record, it must be presumed that the argument was within the record and proper inferences were drawn therefrom. Tice v. Mandel, N.D., 76 N.W.2d 124; King v. Railway Express Agency, supra. Applying the presumption that the argument was proper and the chart of which the defendant complains was used to illustrate the argument, it would be presumptuous for us to hold that it was improperly used or that improper inferences were drawn therefrom by the jury.

Defendant also contends it was error to permit use of the chart for another reason. He points out that the chart listed the claimed future damages in the same category as the accrued expenses for medical and hospital charges incurred. He points out that in the text of King v. Railway Express Agency, supra, we said:

"There is no doubt that a sheet showing the hospital, doctor, and ambulance expenses and loss of wages could properly be used in the plaintiff's argument on damages, since all of these items had been testified to and the jury had before it *specific* evidence as to the amounts of these items." (Emphasis supplied.)

He then argued that future expenses require a computation based on life expectancy and, therefore, this is not specific evidence. The chart in question was not made an exhibit. It was not taken by the jurors to the jury room. It was used by counsel for the plaintiff as an aid to his argument. There was evidence before the jury on future medical expenses testified to by the medical experts based upon reasonable medical certainty that they were permanent. It was a simple matter of computation to arrive at the amounts claimed for future expenses in each of the categories listed. The argument is not a part of the record. Therefore, we must presume that counsel, in his argument to the jury, stayed within the record and drew proper inferences based on evidence, and that the chart was merely used as an aid. We cannot speculate to the contrary.

We cannot say in this case, as we did in King v. Railway Express Agency, supra,

that the information contained on the chart presents a sufficient record (standing alone) to allow us to determine the correctness of the argument in the absence of a record of the argument. The amounts stated are substantiated by evidence. It would be presumptuous for us to say the chart constitutes sufficient record to allow us to determine that the summation to the jury was prejudicial error.

The next series of specifications of error are termed general assignments of error.

 Defendant specifies it was error to admit testimony through the defendant on cross-examination that his attorney in the criminal action, which arose out of the same occurrence, was one other than the attorney defending him in this action. The defendant on cross-examination had testified he had pleaded guilty to the crime of operating a motor vehicle without due care. He was also asked: "Who was your attorney at that time?" The question was objected to on the ground that it was immaterial and privileged. It was overruled. The defendant argues the error was prejudicial to the defendant's case because it permitted the jury to speculate that the attorney who represented him in the criminal case refused to defend in the civil case and that it was designed to discredit the defendant's attorney and, consequently, his defense. The plaintiff argues the purpose was preliminary and for background, and that it was within the broad discretion of the trial court to permit under cross-examination. Neither party has cited any authority in support of his argument. The plaintiff has not shown us, and we do not see from a study of the record, what this subject was preliminary to or a background for. We think the objection should have been sustained. We fail to see the materiality. It was, therefore, error to have overruled the objection. However, we do not agree it was prejudicial to defendant's case, even though we may concede it was designed to discredit the defendant's attorney and, consequently, his defense but we do

not see how this was accomplished. A criminal defense and a defense in a civil action stemming out of the same occurrence are not comparable and certainly the judgment of one attorney not to defend as against the judgment of another to defend would have no weight in the minds of the jurors sitting on the trial of the latter case. The defendant, as appellant herein, had the burden not only of showing the error but of showing that the error was prejudicial. Moe v. Kettwig, N.D., 68 N.W.2d 853; Killmer v. Duchscherer, N.D., 72 N.W.2d 650; Grenz v. Werre, N.D., 129 N.W.2d 681.

We are not sufficiently impressed with the defendant's argument to hold this error was prejudicial to the defendant's case and we hold it does not constitute reversible error.

The defendant next assigns it was error to instruct: "According to the American Experience Table of Mortality, the expectancy of life of Mrs. Etta Teegarden is 11.17 years." He points out it is not the American Experience Table which gives a life expectancy of 11.17 years for a person 68 years old but the Commissioner's 1958 Standard Ordinary Table of Mortality instead. And, further, he argues that the given age of 68 years was Mrs. Teegarden's age at the time of the accident but that she was 69 years old at the time of trial and this gave an erroneous guide to the jury to compute future damages. According to the Commissioner's 1958 Standard Ordinary Table of Mortality, as found in the 1965 Cumulative Annual Pocket Parts of 58 C.J. S., the expectation years of life of a person 69 years of age is 10.64 years.

Our statute, 31-08-05, N.D.C.C., authorizes the use of standard statistical tables of mortality as evidence of probable duration or expectation of life and we have held in several cases that the court may take judicial notice of such tables and instruct the jury accordingly. Ruehl v. Lidgerwood Rural Telephone Co., 23 N.D. 6, 135 N.W.

793; Chambers v. Minneapolis, St. P. & S. S. M. Ry. Co., 37 N.D. 377, 163 N.W. 824; Schultz v. Winston & Newell Co., 68 N.D. 674, 283 N.W. 69; Geier v. Tjaden, N.D., 74 N.W.2d 361.

This court has held that on appeal it may take notice of the tables, even though they had not been introduced in evidence. Schultz v. Winston & Newell Co., supra. We take judicial notice of the fact that both the American Experience Table of Mortality and the Commissioner's 1958 Standard Ordinary Table of Mortality are standard statistical tables of mortality within the definition of Section 31–08–05, N.D. C.C. The fact that the court in its instructions happened to name the wrong standard statistical table is unimportant and constitutes harmless error.

The defendant argues that the vice of giving the wrong number of years of life expectancy is twofold and permits doubling up of damages from the time of accident to the time of trial as the jury might award damages proved to date of trial and compute future damages from date of accident. The accident occurred on October 9, 1963, and the trial commenced on June 8, 1964, eight months later. The plaintiff became 69 years of age on April 17, 1964, about one and one-half months before the trial. The difference in life expectancy of the two ages is .53 years or about six months. The court also admonished the jury in its instructions that the life expectancy is of restricted significance and is merely an estimate of the probable average remaining length of life of the person, and that the jury should also consider other evidence introduced, such as occupation, health, habits, and activity of the person whose life expectancy is in question.

It has been held that to render mortality tables admissible on an issue of expectancy of life, the exact age of the person whose expectancy is involved need not be shown, the approximate age will suffice. 20 Am. Jur., Evidence, Sec. 973.

On the basis of the admonition, the error, we find, is trivial and insignificant and is not prejudicial.

Defendant also complains the instruction establishes an expectancy of life for Etta Teegarden; whereas, it should have advised the jury it was a life expectancy of a person of her age classification. We find no merit in this argument because the court also instructed this evidence has restricted significance and instructed: "Life expectancy shown by the mortality tables is merely an estimate of the probable average remaining length of life of all persons in our country of a given age, and that estimate is based on not a complete but only a limited record of experience." The court also gave more detailed instructions relative thereto, admonishing the jury that life expectancy applies only to one who has average health and exposure to danger and, as we stated above, that the jury should also take into consideration other evidence pertaining to the person, including occupation, health, habits, and activity. The error at most is very technical and was certainly not prejudicial.

Lastly, the defendant specifies that the verdicts in each case were not substantiated by the evidence and were given under the influence of passion and prejudice. The appellant, in his argument, recognizes the general rule that a motion for a new trial upon this ground is addressed to the sound judicial discretion of the trial court, and its decision will not be disturbed unless abuse of that discretion is clearly shown. This is the rule. We have so held in many cases. See list of cases in Gravseth v. Farmers Union Oil Company of Minot, N.D., 108 N.W.2d 785. The defendant argues in this case, however, that in view of the multitude of errors, including a very high verdict, that this court is entitled to take a new look and determine: (1) that the evidence does not justify the verdict, or

(2) that the many errors in the trial require a new trial. The trial court in its memorandum decision states that it found no harmful error nor did it find any ground upon which the amount of the verdict could be reduced. The function of this court on appeal is merely to review the ruling of the trial court on this motion. This review is limited to a determination of the question of whether the trial court abused its discretion, resulting in injustice. Reid v. Ehr, 36 N.D. 552, 162 N.W. 903; Gravseth v. Farmers Union Oil Company of Minot, supra.

We have carefully reviewed all of the evidence and under the circumstances cannot say, as a matter of law, that the verdict is excessive or that the court abused its discretion in denying the motion for new trial on this ground.

We find no error in the record that would warrant a reversal of the order denying a new trial or a reduction of the verdict in lieu of a new trial. The order is affirmed.

BURKE, C. J., and STRUTZ, ERICKSTAD and KNUDSON, JJ., concur.