378 A.2d 943

HIS WORLD, INC., James Gregg and John Wolfe, Appellees,

v.

CLETO M., INC., Joseph Montemurro, Nick Montemurro, Shy Margolis and Edward J. Oach.

Appeal of CLETO M., INC. and Joseph Montemurro.

Superior Court of Pennsylvania.

Argued Nov. 11, 1976.

Decided Oct. 6, 1977.

294

Peter J. King, Pittsburgh, for appellants.

Robert H. Somerton, with him Zupancic & Somerton, Pittsburgh, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

This is an appeal from a judgment in an action of trespass for damages arising from an alleged wrongful distraint by a landlord. Judgment has been entered against appellants for $50,000 on the basis of a jury verdict awarding appellees $45,000 in compensatory damages and $5,000 in punitive damages. The jury denied appellant landlord Joseph Montemurro a recovery on a counterclaim against appellee James Gregg for rental for the balance of the term of the lease. In post-trial hearings, appellants have been denied a judgment n. o. v., a new trial and a requested remittitur of any judgment in excess of $10,000.

On July 1, 1970, appellant Joseph Montemurro entered into a three year lease with appellee James Gregg for premises known as 1801 Yancey Street in the Morningside district of Pittsburgh. The leased premises were divided

into front and back rooms with a separate outside entrance to each. Appellees James Gregg and John Wolfe, operating in the name of His World, Inc., a Pennsylvania corporation which they owned, maintained a men's hair salon in the front room where they sold men's hair pieces and wigs. Operating as a partnership, they maintained a women's beauty shop known as Gregg's Coiffures in the rear room of the premises.

At approximately the end of the first week in October, 1971, appellees ceased doing business at the leased premises on Yancey Street and closed and locked the property without notice or explanation to Joseph Montemurro, the landlord. James Gregg, who had operated the women's beauty parlor on the premises, arranged with such of his women clients as were willing to do so to transfer their patronage to him at a beauty parlor operated by Gregory Marcello on North Craig Street in the Oakland district of Pittsburgh. Marcello's beauty parlor was known as Gregory's Coiffures. During the month of October, 1971, Gregg succeeded in transferring approximately forty percent of his women clients to Gregory's Coiffures where Gregg served them as a beautician. Additional clients followed Gregg to his new location in succeeding weeks.

In the latter part of October, 1971, there came to Montemurro's attention two ads in the "East Liberty Gazette". One read as follows:

"Mr. Gregg

of Stanton Heights

One of Pittsburgh's Finest Hairstylists

Would Like to Invite All His·Customers
and Friends to His New Location

Gregory's Coiffures

214 North Craig Street—Phone: 682–1191"

The other ad read:

"Russell Kopf Hair Fashions
Announces that the Staff, including
the manicurist from Gregg's Coiffures
of Stanton Heights & Morningside
are working at the

Penn Ave. Shop in the Penn Plaza
Penn Circle—5704 Penn Ave. 661-3550"

There was also posted on the front window of the rented premises a notice that His World, Inc. could be reached at a room in the Bigelow Apartments or at a telephone number stated in the notice.

Montemurro concluded that his tenant had abandoned the premises on Yancey Street. He visited the property approximately twenty times in business hours during the latter part of October and the early days of November, 1971, and on each occasion found the premises locked and no one on the property. No explanation had been given to him by anyone as to why the property was closed and locked during business hours.

Paragraph 29 of the lease provided:

"If premises at any time be deserted or closed, the lessor may enter by force without liability to prosecution or action therefore and may distrain for rent and also re-let the premises as agent of the tenant for any unexpired portion of the term and receive the rent therefore and apply it on this lease."

Proceeding on the premise that the leasehold had been closed and deserted, Montemurro levied a landlord's distraint on the personal property within the leased premises on November 3, 1971, and a constable's sale of the property was held on November 30, 1971, at which time Montemurro bought in the property levied upon for $675.

The property levied upon consisted almost entirely of beauty parlor equipment. The landlord kept the property in place on the premises for several months in the hope that Gregg would negotiate with him for its repurchase. Montemurro then sold such of the equipment as was salable for $1,000 to a third party who used it to open a beauty parlor at a new location.

Shy Margolis and Edward J. Oach, the constables involved in the distraint and sale, were named as defendants in the litigation which followed. Margolis was served with process but has left the jurisdiction; and a non-suit was entered as to Oach at the conclusion of the appellees' case in the court below.

At the direction of one of the constables, the landlord's distraint was levied in the name of Cleto M., Inc. as landlord, this being a family holding company of Joseph Montemurro and his brother, Nick Montemurro, with which the constable had had previous experience and erroneously assumed to be the landlord. While this was plainly erroneous, it has no relevance to the amount of damage suffered by the appellees. Nick Montemurro, the brother of the landlord, was joined as a party defendant because of his involvement as an officer and shareholder of Cleto M., Inc.; but a non-suit was granted as to him at the conclusion of the appellees' case in the court below.

It is the position of the appellees that they had not abandoned the leased premises and that the distraint was, therefore, unlawful. Rent was not otherwise in arrears. It was the testimony of appellees Gregg and Wolfe that their abandonment of operations of the leased premises was intended to be temporary until such time as they could sell their women's beauty trade to Gregory's Coiffures and remodel the leased property so that the front room would be suitable as a salon for the sale of men's wigs and hair pieces and the rear room subdivided into small offices or cubicles as an aid to the wholesaling of men's wigs and hair pieces. Under the plan that they envisioned, these offices or cubicles would be rented to different barbers who would sell wigs or hair pieces at retail to their clients by bringing them to the office assigned to them at the leased premises, where they would display to the client hair pieces or wigs from the stock that Gregg and Wolfe would maintain on the premises. If a sale were made, the barber would buy the hair piece wholesale from Gregg and Wolfe and sell it retail to his client.

The renovation of the leased premises to go into this wholesale business required the written consent of the landlord by the terms of the lease; but Montemurro was neither told of these plans nor was his consent asked, Gregg resting upon a statement of Montemurro's when an earlier alteration had been made that he didn't care what Gregg did with the property so long as the rent was paid. Gregg's plan also required that he transfer his women clients to Gregory's Coiffures for a payment of $6,500 which was to be the capital to put the appellees into the business of wholesaling men's wigs and hair pieces, including the alteration of the leased premises required to make this business possible. This sale of Gregg's beauty parlor business never materialized.

Montemurro's defense of the distraint and constable's sale is that the premises were deserted and closed by the tenant. It is appellees' position that this was a temporary situation pending property alterations to enable them to start up a new wholesale business. The jury's verdict has determined this issue of fact in favor of the appellees. It also has the legal consequence of subjecting appellants to Section 313 of the Landlord and Tenants Act of 1951, 68 P.S. § 250.313, which provides:

"In case any distress and sale of personal property shall be made for rent when no rent is due to the person distraining or to the person in whose name the distress has been taken, then the owner of the personal property shall, by action of trespass brought against the person distraining, recover double the value of the personal property so distrained and sold, together with the costs of suit."

The rationale for double damages lies in the circumstance that when Montemurro resold the property to a bona fide purchaser for value, he deprived Gregg of the opportunity to sue in replevin to recover the property: *Brunswick Corporation v. Key Enterprises, Inc.*, 431 Pa. 15, 19, 244 A.2d 658 (1968). Actually Gregg testified that he had no use for this beauty parlor equipment and would have sold it in the market had it remained in his possession. However, the

doubling of damages is mandatory by the terms of the statute.

Appellees Gregg and Wolfe also claimed $6,500 in damages because of their failure to complete the transfer of their beauty shop clientele to Gregory's Coiffures. It is Gregg's testimony that an understanding existed with Gregory Marcello that he would pay Gregg and Wolfe this sum after the transfer was completed, although Marcello testified that it was his understanding that this would be reduced to a written contract after it was determined how much of Gregg's trade could be transferred. No such written contract materialized.

The understanding contemplated that Gregg was to move over to Gregory's Coiffures and care for his clients' needs at that location for a month or more while his clients became acquainted with other operators at Gregory's. Contrary to this time schedule, Gregg worked three days a week at Gregory's Coiffures for approximately a year and received the normal beautician's commissions for his efforts.

Marcello conceded that he obtained and held the patronage of Gregg's customers but explained that Gregg received commissions for approximately a year's work in lieu of other payment. We find no convincing relationship between the fact that Marcello did not pay Gregg $6,500 and the levy on the beauty parlor property at the leased premises. There is no claim that any of the property levied upon was to have been sold to Gregory's Coiffures. Gregg testified that he had to continue to work at Gregory's Coiffures in order to support himself; but this circumstance would appear to be unrelated to the constable's sale of the beauty parlor equipment on the leased premises. If he had an agreement with Gregory, and if Gregory honored the commitment, he could have taken $6,500 for his clientele and worked elsewhere. Nor is any explanation given by either Gregg or Marcello as to why Gregg's presence at Gregory's Coiffures for a year instead of a few months should have caused the sale of the clientele to fall through. It would appear that the understanding between the parties was

never carried out and that it was ultimately concluded by Marcello that Gregg's commissions while working at Gregory's Coiffures were adequate compensation for the transfer of his trade. In any event, there is no evidence that the sale failed because of the landlord's distraint at Yancey Street. Consequently the jury should not have been allowed to include this claim in its computation of damages.

■ Appellees make a third claim for damages based on profits which would allegedly have been made in the retail sale of men's hair pieces and wigs had Gregg and Wolfe been able to carry on that business after the distraint and through calendar 1972. Gregg estimated this lost profit at $21,500 and Wolfe at $25,312.50, both based on an estimated unit profit on an estimated number of sales of men's wigs or hair pieces. However, there is no evidence that the distraint kept appellees out of the retail wig and hair piece business. They had carried on such a retail business in the front storeroom of the Yancey Street property until October, 1971, when they voluntarily closed it for a remodeling appropriate to a retail business in the front room and a wholesale business in the rear room. There was nothing unique about either room, both being storerooms 18 feet wide and 30 and 38 feet deep, respectively. After the landlord's distraint, appellees could have opened a combined retail and wholesale business in any number of store fronts available in the city. In point of fact, they chose to devote themselves to the wholesale wig and hair piece business, supplemented by Gregg's three day a week employment throughout the year at Gregory's Coiffures. They succeeded in making a gross income of $43,365 from their wholesale business which was 50% greater than they had earned in 1971 while they were in the retail business. Gregg's earnings as a hair stylist at Gregory's Coiffures are not shown. It seems fair to assume that Gregg and Wolfe devoted the remainder of their time to the wholesale business in men's wigs and hair pieces because it was more profitable for them to do so than to divide their efforts with a retail business. But whatever the reason for staying out of the retail business in 1972, it has no

discernible relationship to the landlord's distraint on the Yancey Street property. The jury should not have been permitted to base an award of damages on estimated profits in a business from which they had withdrawn in October, 1971, and from which the appellants in no way precluded them from reentering.

Finally, the jury was charged that they might award punitive damages if they found that appellants had acted vindictively or in bad faith. We find no evidence that appellants had so acted. Montemurro made twenty trips to the leased property during business hours to confirm the fact that the leasehold had, in fact, been closed and apparently abandoned and he waited nearly a month before acting upon that premise. His fears that the tenant had abandoned the property appeared to be confirmed from the ads in the "East Liberty Gazette" that his tenant was now doing business on Craig Street and that the tenant's employees had been rehired by another beauty parlor. He authorized the postponement of the constable's sale from November 15 to November 30 at the request of counsel for the appellees. After he purchased the property at the constable's sale, he kept it on the premises for two months before reselling it in order to give appellees a chance to negotiate for its repurchase.

This litigation would appear to be an outgrowth of poor communication rather than malice. Neither party made any effort to communicate with the other from the time the premises were closed in early October, 1971, until the property levied upon was resold to a third party in the early months of 1972. Montemurro could have called Gregg on the telephone at anytime or visited him in person at Gregory's Coiffures on Craig Street after the advertisement of his presence there appeared in the "East Liberty Gazette". He elected not to do so, relying upon his own repeated investigation as to the abandonment of the property, confirmed by the advertised relocation of Gregg and Gregg's employees. Had he got in touch with Gregg, he might have learned of

Gregg's plans to remodel and reopen the Yancey Street premises.

It is equally unfortunate that appellees Gregg and Wolfe made no effort to get in touch with Montemurro when they closed and locked the premises in October, for had they explained their plans which were otherwise totally unknown to Montemurro he might well have gone along with them. It is more surprising because Montemurro's written consent was necessary to any remodeling of the property. Had either appellee explained their plans to Montemurro at the time of the distraint it could well have been abandoned and the constable's sale called off. However, by that time appellees were committed to litigation as preferable to negotiation so that no later effort was made to clear up what appears to have been a misunderstanding. We find no basis for permitting the jury to award punitive damages, particularly in view of the fact that the statutory remedy of double damages is itself punitive in nature.

In summary, the jury should have been permitted to award damages based on double the value of the personal property distrained, but nothing more. Witnesses for the appellees placed an itemized valuation of $11,126 on the property, and while appellants challenged this figure on cross examination they offered no testimony in support of a different value. Consequently, the jury was entitled to accept the appellees' valuation. This is dispositive of appellants' argument that they should have been granted a compulsory non-suit or a directed verdict.

The judgment is affirmed upon the filing by appellees of a remittitur of the excess over $22,252; otherwise a new trial is granted.

PRICE, J., files a dissenting opinion.

PRICE, Judge, dissenting:

I would affirm the judgment believing it to be proper under the law and supported by the evidence.