Anita BJORGEN, Plaintiff, Appellee
and Cross–Appellant,

v.

Robert W. KINSEY and Robert W. Kin-
sey, a professional corporation, Defen-
dants, Appellants and Cross–Appellees.

Civ. No. 900155.

Supreme Court of North Dakota.

Feb. 21, 1991.

Winkjer, McKennett, Stenehjem, Murphy & Reierson, Williston, for plaintiff, appellee, and cross-appellant; argued by Kent A. Reierson.

McGee, Hankla, Backes & Wheeler, Ltd., Minot, for defendants, appellants, and cross-appellees; argued by Donald L. Peterson.

GIERKE, Justice.

Robert W. Kinsey and his professional corporation [Kinsey], appeal from a judgment entered on a jury verdict awarding Anita Bjorgen [Anita] $526,964.30 in damages for fraud, deceit, and legal malpractice, and from orders denying post-trial motions. Anita has filed a cross-appeal from the judgment. We affirm.

Viewed in the light most favorable to the jury verdict, the evidence reveals that Kinsey had maintained a general law practice in Crosby since 1968. In 1972 Kinsey served as one of the legal counsel for the First National Bank of Crosby [Bank] in seeking a charter. After the charter was obtained in 1977, Kinsey continued to provide legal services for the Bank. In addition, Kinsey served for a period of time on the Bank's board of directors and by June 1983 owned approximately four percent of the Bank stock and between 12 and 13 percent of the stock in the Bank's holding company.

In 1975 Kinsey developed an estate plan for Anita and her husband, Lyle Bjorgen, in which the couple's farm property was placed in Lyle's name alone. Anita and Lyle encountered marital difficulties and eventually separated. In April 1982 Anita and Lyle were divorced and the parties stipulated to a property settlement in which Lyle received property worth approximately $217,000 and Anita received property

worth approximately $160,000. Anita, who had not been represented by counsel, shortly thereafter hired an attorney to attempt to have the 1982 divorce and property settlement agreement set aside. This was accomplished by the end of 1982. Kinsey was not involved in the 1982 divorce proceedings.

In March 1983 Anita consulted Kinsey about a proposed property settlement agreement she had received from Lyle's attorney. Kinsey agreed to represent Anita in a new divorce action and, at her request, recorded a lis pendens on all of the farm property in April 1983.

In the meantime, Lyle had become substantially indebted to the Bank. On January 10, 1983, Lyle renewed promissory notes to the Bank in the amount of $90,000. The Bank took a security interest in a motor home, two cars, and mineral acres which were in Lyle's name. Lyle obtained another $10,000 loan from the Bank one month later. The notes were not due until December 15, 1983, and Anita did not sign either of the notes. Kinsey was on the Bank's board of directors when the Board approved the loans to Lyle, and Kinsey did a title opinion on the mineral acres Lyle mortgaged to the Bank to secure the debt.

On June 17, 1983, Kinsey sent Anita the first draft of a proposed property settlement agreement in the divorce action. Under the agreement, Anita was to receive substantially all of the parties' farm property including the mineral interests. She was also to receive 10,000 shares of the Bank's holding company stock which were owned by Lyle.

The day before Kinsey sent Anita the proposed agreement, he contacted a Williston law firm to bring an action on behalf of the Bank against Lyle on his promissory notes even though they were not due until December 15, 1983. Kinsey had previously gone to the Bank president and informed him that the Bjorgens were getting a divorce and that the Bank should call the promissory notes due and bring an action against Lyle directly on the notes. In a letter dated June 20, 1983, to the Williston law firm, Kinsey stated:

"I am enclosing copies of the two notes signed by Lyle Bjorgen to the First National Bank of Crosby.

"As I explained to you, because of a pending divorce between Lyle Bjorgen and his wife the bank believes that its prospect for payment is significantly impaired. Consequently, the bank wants to declare the notes due and payable immediately.

"Because I am representing Mr. Bjorgen's wife, I do not believe that I can represent the bank. I appreciate your willingness to undertake a review of this matter.

"I am enclosing the following:

"1) Copies of Mr. Bjorgen's Financial Statements.

"2) Copy of the Real Estate Mortgage.

"3) Copies of the Ownership Certificates of the two vehicles which are additional security for the loan.

"4) A copy of the Notice of Lis Pendens which we filed in the divorce action describing all of the real estate in which Mr. Bjorgen has an interest.

"As we discussed, it may be best for the bank to release its mortgage on the mineral interests which Mr. Bjorgen has and go after the equity in his real estate and personal property.

"If you decide that that is the best course of action, please file a Lis Pendens against his real estate.

"Additionally, Mr. Bjorgen owns 10,000 shares of Dakota Bancorporation, the holding company which owns eighty percent of the First National Bank of Crosby. Please attach these shares of stock.

"I do think that it is important that this matter receive your prompt attention."

Kinsey did not inform Anita about the Bank's pending action and continued to contact the Williston law firm periodically regarding the status of the Bank's case against Lyle. Kinsey billed the Bank for these telephone consultations.

After an unsuccessful attempt at a reconciliation with Lyle, Anita and Lyle agreed to a settlement and she instructed Kinsey on August 15, 1983, to discontinue

the divorce action and to prepare a deed transferring all of the property to her. Anita believed that if the divorce action was dismissed, the property could be conveyed without adverse tax consequences. Anita still intended to obtain the divorce from Lyle, but only after the property was conveyed to her. Kinsey agreed to prepare a deed, but did not do so. On August 24 and 25, 1983, Kinsey again consulted by telephone with the Williston law firm regarding the Bank's action against Lyle.

After failing to receive the deed to the property, Anita contacted Kinsey on September 9, 1983, and again asked for a deed. Kinsey noted in his file that Anita wanted all property transferred to her and that she "will assume the debts." Anita asked Kinsey to do research on the tax consequences and Kinsey informed her that he could not begin the research until September 19, 1983. Kinsey was in contact with the Williston law firm on September 12, 13, and 14, 1983, and was informed by letter that the Bank had obtained a writ of attachment but that no attachment could take place for ten days. On September 14, 1983, Kinsey wrote to Anita and informed her that he could not transfer the property from Lyle to her because it had been attached by the Bank.

Because the lis pendens recorded by Kinsey in April 1983 was still of record, the Williston law firm was concerned about its effect on the Bank's attachment of the property. Kinsey testified that he knew if the divorce action were dismissed the lis pendens would no longer be effective and Anita would be left with no protection. Kinsey also admitted that he did not explain the effect of the dismissal of the divorce action to Anita though he knew that if the action were dismissed, the Bank's attachment would take precedence. Kinsey had Anita's divorce case dismissed without prejudice in November 1983.

Kinsey continued to have telephone conferences with the Williston law firm, the Bank, the Farmers Home Administration [FmHA], and the sheriff regarding appraisals of the Bjorgen property and the amount of the FmHA mortgage on the property.

Kinsey forwarded a letter to the Williston law firm with the appraisal values and the amount of the FmHA indebtedness, which showed equity in the surface of the Bjorgen property of between $134,000 and $156,000. Kinsey noted in the letter that "[i]t would appear that we are relatively well secured."

After having the complaint amended to allege a default, the Bank in May 1984 obtained a judgment for more than $100,-000 against Lyle on the promissory notes. *See First Nat'l Bank of Crosby v. Bjorgen*, 389 N.W.2d 789 (N.D.1986). The Bank executed on the judgment, first selling the shares of the Bank's holding company stock owned by Lyle for $17,000 in September 1984. Kinsey appeared at the sale and billed the Bank for attending.

In the meantime, Lyle had his attorney draft deeds conveying the property to Anita. A mineral deed and warranty deed conveying the farm property to Anita were recorded in September and October 1984, respectively. Anita had Kinsey reinstate the divorce action against Lyle in October 1984 and Kinsey wrote Anita a letter stating that she would be receiving all of the property in the settlement agreement. On November 16, 1984, Kinsey notified Anita that they could appear in court for the divorce case on December 18, 1984. The Bank had by then arranged to sell the Bjorgen farm property at a sheriff's sale on November 27, 1984. The Bank purchased the property at the sheriff's sale for approximately $325,000, which included the Bank's satisfaction of the $213,000 FmHA lien. Although Anita received her homestead exemption from the Bank, Kinsey was "upset" when he learned of it after the sale.

Kinsey appeared in court with Anita on December 18, 1984, and obtained the divorce. Immediately after the hearing Kinsey told Anita that he owned a substantial interest in the Bank and asked her to sign a quit claim deed to the Bank. The Williston law firm had previously contacted Kinsey and requested that he ask Anita for a waiver of her right of redemption. Anita refused to sign. On December 26, 1984,

Kinsey obtained a release of the lis pendens filed in April 1983 in connection with Anita's first divorce action.

On November 5, 1986, Anita brought this action against Kinsey and his professional corporation seeking damages for legal malpractice based upon conflict of interest and treble damages for attorney deceit or collusion under § 27–13–08, N.D.C.C. Kinsey denied the allegations and pleaded as an affirmative defense that Anita's action was barred by the two-year statute of limitations in § 28–01–18, N.D.C.C. The trial court granted Anita's motion for partial summary judgment striking the statute of limitations defense. The jury returned a special verdict finding that Kinsey breached his professional duty to Anita; that the breach was a proximate cause of damages to Anita; that Kinsey was guilty of deceit or collusion against Anita; and that Kinsey's actions were a proximate cause of damages to Anita. The jury awarded Anita $172,000 in compensatory damages and, having found Kinsey guilty of fraud or malice, awarded her $100,000 in punitive damages. The trial court trebled the $172,-000 award of compensatory damages under § 27–13–08, but disallowed the $100,000 punitive damage award. The trial court denied Kinsey's subsequent motions for judgment notwithstanding the verdict and, in the alternative, for a new trial. The trial court also denied his motion for relief from judgment under Rule 60(b), N.D.R.Civ.P., and Kinsey appealed. Anita has filed a cross-appeal challenging the trial court's disallowance of the punitive damage award.

## STATUTE OF LIMITATIONS

Kinsey asserts that the trial court erred in ruling as a matter of law that Anita's legal malpractice action was not barred by the two-year statute of limitations under § 28–01–18(3), N.D.C.C. Kinsey asserts that his representation of Anita terminated when the first divorce action was dismissed without prejudice on November 18, 1983, and because the alleged acts of malpractice occurred before that date, Anita's malpractice action is barred. The trial court ruled as a matter of law that the

two-year statute of limitations was tolled under the continuous representation rule. We agree.

In *Wall v. Lewis*, 393 N.W.2d 758, 762 (N.D.1986), we ruled that the continuous representation rule is applicable to legal malpractice actions in this jurisdiction:

"As applied in legal malpractice actions, the rule tolls the statute of limitations or defers accrual of the cause of action while the attorney continues to represent the client and the representation relates to the same transaction or subject matter as the allegedly negligent acts."

Although application of the continuous representation rule generally presents a question of fact [*Wall v. Lewis, supra,* 393 N.W.2d at 763], where there is no genuine dispute as to either the material facts or the inferences to be drawn from undisputed facts, this issue, like any other, may be determined as a matter of law. *E.g., Heller v. Production Credit Association of Minot,* 462 N.W.2d 125, 127 (N.D.1990).

The undisputed facts show that when Anita's first divorce action was dismissed without prejudice in November 1983, Kinsey wrote a letter to Anita explaining that she could "re-institute the suit at any time." When the second divorce action was filed, Kinsey viewed it as a recommencement of the original divorce action against Lyle, explaining to Anita that "this Complaint is substantially identical to the one which was prepared in April 1983." Kinsey obtained a divorce for Anita on December 18, 1984. On December 26, 1984, Kinsey obtained a release of the lis pendens which had been filed April 29, 1983, in connection with the first divorce proceeding. Kinsey signed the release of lis pendens as attorney for the plaintiff in the 1983 divorce action. Kinsey billed Anita for work on the 1983 divorce action after the divorce was finally completed in December 1984. As the trial court reasoned, the actions were in essence the same because "the same property was in question, the same divorce action of the parties and all of the attendant circumstances were still viable." We conclude that the trial court did not err in determining as a matter

of law that the continuous representation rule tolled the two-year statute of limitations.

■ Moreover, the trial court ruled in the alternative that "the fraud aspects of the case take it out of the statute of limitations on that basis as well." We have recognized that a complaint may plead both a cause of action for legal malpractice and a cause of action for fraud, each with a different statute of limitations. *Herzog v. Yuill,* 399 N.W.2d 287, 291 (N.D.1987). The statute of limitations for fraud and deceit is six years. *See* § 28–01–16(6), N.D.C.C.[1] Anita's action alleging attorney deceit and collusion was brought well within the six-year limitation period.

## PROXIMATE CAUSE

■ Kinsey asserts that Anita failed to sustain her burden of proving that his actions were the proximate cause of her damages. The existence of proximate cause is a fact question, unless the evidence is such that reasonable minds can draw but one conclusion. *Leno v. Ehli,* 339 N.W.2d 92, 96 (N.D.1983). Our review of questions of fact tried to a jury is limited to determining if there is substantial evidence to support the verdict. *Dewey v. Lutz,* 462 N.W.2d 435, 439 (N.D.1990). We view the evidence in the light most favorable to the verdict and it is only when reasonable people "can reach but one conclusion upon review of the issues that the evidence becomes a question of law for the court." *Vasichek v. Thorsen,* 271 N.W.2d 555, 558–559 (N.D. 1978). Thus, unless the verdict is so flagrantly against the weight of the evidence that it appears the jury was actuated by bias or prejudice, the verdict will not be set aside. *City of Hazelton v. Daugherty,* 275 N.W.2d 624, 627 (N.D.1979).

■ An attorney is liable for all losses caused by the failure to follow with reasonable promptness and care the lawful instructions of his client. *Olson v. Fraase,* 421 N.W.2d 820, 829 (N.D.1988). An attorney is also liable to his client for damage resulting from his representation of adverse interests. *Johnson v. Haugland,* 303 N.W.2d 533, 538 (N.D.1981); *Rolfstad, Winkjer, Suess, McKennett & Kaiser v. Hanson,* 221 N.W.2d 734, 737 (N.D.1974). Likewise, an attorney, like any other defendant, is liable for damages resulting from his acts of fraud or deceit. *Olson v. Fraase, supra,* 421 N.W.2d at 827; 1 Mallen and Smith, *Legal Malpractice* § 8.8 (3d ed. 1989).

■ The evidence shows that Lyle and Anita agreed that Anita would receive the property. Anita presented evidence in the form of expert and lay witness testimony to support the position that had Kinsey followed Anita's instructions to dismiss the divorce action and prepare deeds conveying the property to her, and had the Bank not attached the property, which occurred largely through Kinsey's own efforts, Anita would have received the property free and clear of any liens except the FmHA mortgage. Furthermore, Anita testified that she would not have had the divorce case dismissed had Kinsey informed her that the dismissal would nullify the lis pendens, thus allowing the Bank to obtain the property through the attachment proceedings. We conclude that there was substantial evidence to support the jury's finding that Kinsey's actions were the proximate cause of Anita's damages.

## TREBLE DAMAGES STATUTE

Kinsey asserts that the trial court made numerous errors in its application of the treble damages statute, § 27–13–08, N.D. C.C., to this case. That statute provides:

---

1. Although the six-year statute of limitations in § 28–01–16(6), N.D.C.C., refers only to "fraud" rather than "deceit," the determination of which statute of limitation is applicable in a given case rests on the actual nature of the action. *Johnson v. Haugland,* 303 N.W.2d 533, 538 (N.D. 1981). The conduct prohibited under the separate statutory definitions of fraud and deceit is "substantially identical." *Dewey v. Lutz,* 462 N.W.2d 435, 442 (N.D.1990). Because § 27–13–08(1), N.D.C.C., merely provides treble damages for actions based on an attorney's acts of essentially common law deceit or collusion, we conclude that the six-year statute is applicable. *See Seevers v. Arkenberg,* 726 F.Supp. 1159, 1169–1170 (S.D.Ind.1989).

*"27–13–08. Misconduct of attorney—Penalty—Treble civil damages forfeited.* Every attorney who:

"1. Is guilty of any deceit or collusion or consents to any deceit or collusion with intent to deceive the court or any party;

"2. Willfully delays his client's suit with a view to his own gain; or

"3. Willfully receives any money or other property for or on account of any money or debt which he has not laid out or become answerable for,

"is guilty of a class A misdemeanor and in addition forfeits to the party injured treble damages to be recovered in a civil action."

■ Kinsey first asserts that § 27–13–08 requires a criminal conviction before damages may be trebled in a civil action. We disagree. Construing a statute almost identical to § 27–13–08, New York courts have ruled that a criminal conviction is not a condition precedent to civil use of the statute based on the general rule that where a statute grants a civil as well as a criminal remedy, the two are separable. *See Wiggin v. Gordon,* 115 Misc.2d 1071, 455 N.Y.S.2d 205, 208–209 (1982); *Fields v. Turner,* 1 Misc.2d 679, 147 N.Y.S.2d 542, 544 (1955). We find these decisions persuasive and conclude that a criminal conviction need not precede use of the civil damage provision of § 27–13–08.

Because the damages which may be trebled under § 27–13–08 must result from the attorney's acts of deceit or collusion [*Olson v. Fraase, supra,* 421 N.W.2d at 832], Kinsey asserts that the trial court erred in trebling the entire $172,000 in compensatory damages found by the jury. Kinsey contends that the special verdict form submitted to the jury should have required the jury to separate the amount of damages that were caused by his fraud, deceit, or collusion and the amount of damages that were caused by his negligence, and that only the former amount can be trebled.

■ We need not reach the merits of this issue because our review of the certified record on appeal does not reveal that Kinsey requested separation of damages in his proposed special verdict form or that he objected to the absence of such a separation of damages in the trial court's verdict form prior to submission to the jury. Kinsey therefore cannot complain on appeal. *See, e.g., Hoerr v. Northfield Foundry and Machine Co.,* 376 N.W.2d 323, 327 (N.D.1985).

## JURY INSTRUCTIONS

Kinsey also asserts that the trial court's instructions on the duty of attorneys and the measure of damages were improper. When we review jury instructions on appeal, they " 'must be considered as a whole, and if, when so considered, they correctly advise the jury as to the law they are sufficient although parts of them standing alone may be erroneous or insufficient.' " *Dewey v. Lutz,* 462 N.W.2d 435, 442 (N.D. 1990) [quoting *South v. National R.R. Passenger Corp.,* 290 N.W.2d 819, 825–826 (N.D.1980)]. We believe that the instructions, considered as a whole, fairly and adequately apprised the jury of the law.

■ Kinsey asserts that the trial court erred in refusing to instruct the jury on the issues of contributory negligence and mitigation of damages. Although contributory negligence is generally not a defense to an action for fraud or deceit [*see* 37 Am.Jur.2d *Fraud and Deceit* § 384 (1968); *Fleck v. Jacques Seed Co.,* 445 N.W.2d 649, 653 n. 2 (N.D.1989) ], contributory negligence is a defense available in a legal malpractice action. *See Feil v. Wishek,* 193 N.W.2d 218, 225 (N.D.1971); 2 Mallen and Smith, *Legal Malpractice* § 17.2 (3rd ed. 1989). However, the trial court need not instruct the jury on issues or matters not warranted by the evidence. *Teegarden v. Dahl,* 138 N.W.2d 668, 677 (N.D.1965).

■ Kinsey contends that instructions on contributory negligence and mitigation of damages were warranted because Anita "testified that she had specialized tax knowledge which she failed to convey to Kinsey and failed to act upon" and because Anita "knew of Kinsey's actions and failed

to take any action herself to remedy what she considered to be Kinsey's defective representation."

We agree with the trial court's resolution of this issue:

"Although the defendant continues to indicate that somehow the plaintiff had specialized tax knowledge, there is no such evidence in the record. It appears that she may have received an opinion from a third party as to the feasibility of the transfer of the property which in no way made her knowledge great enough to be negligent for failure to accomplish that fact through another attorney. She placed her problems in Mr. Kinsey's hands and clearly had nothing to do with the consequences which followed."

Anita's failure to terminate Kinsey as her attorney and seek the services of another attorney was insufficient under the circumstances to raise the issue of contributory negligence. We conclude that the trial court did not err in refusing to instruct the jury on contributory negligence or mitigation of damages.

### FRAUDULENT CONVEYANCE

Kinsey asserts that he was entitled to a directed verdict because, if the property had been conveyed as Anita instructed, it would have constituted a fraudulent conveyance. We disagree.

In determining whether the granting of a judgment notwithstanding the verdict is appropriate, the trial court " 'is required to accept the truth of the evidence presented by the party opposing the motion and the truth of all reasonable inferences from that evidence which support the jury verdict.' " *Hagert v. Hatton Commodities, Inc.*, 384 N.W.2d 654, 657 (N.D.1986) [quoting *Okken v. Okken*, 325 N.W.2d 264, 267 (N.D.1982) ]. It is true that "[c]onveyances between close family members based on consideration of love and affection only, which make the transferor insolvent, are presumed fraudulent as to creditors...." *Jahner v. Jacob*, 252 N.W.2d 1 Syllabus 7 (N.D.1977). In this case, there is evidence tending to show that the Bjorgens had substantial equity in the

property and that Anita would assume the debts on the property, thus leaving the Bank in an unchanged position. Furthermore, Kinsey did not establish that the transfer would result in insolvency. We conclude that the trial court did not err in refusing to direct a verdict in favor of Kinsey on the ground of a fraudulent conveyance.

### RELIEF FROM JUDGMENT

Kinsey asserts that the trial court erred in refusing to grant his Rule 60(b)(v), N.D. R.Civ.P., motion for relief from judgment. The motion was based on a settlement agreement reached in a separate action Anita brought against the Bank.

In September 1986 Anita brought an action against the Bank seeking to quiet title to the property Lyle had deeded to her in September 1984, or in the alternative, damages for the Bank's "use and occupation of the property," including punitive damages. Anita asserted that the Bank had improperly obtained a writ of attachment on the property without naming her as a party even though the notice of lis pendens was of record. The Bank counterclaimed.

On October 2, 1989, after the jury had returned its verdict in Anita's action against Kinsey, Anita and the Bank entered into an "Agreement for Settlement and Release of All Claims." The parties released all claims against each other, "it being expressly understood by the parties that nothing contained herein shall infringe, affect, or prevent plaintiff from pursuing her claims against Robert W. Kinsey or Robert W. Kinsey, a professional corporation." As consideration, the Bank quit claimed the property to Anita and Anita executed a $152,000 promissory note and mortgage with the Bank. The Bank also agreed to pay Anita ten percent of its profits each year for a six-year period, "provided that the total of all such payments shall not exceed the sum of $458,-000." Anita also agreed that the Bank "be subrogated in and to all rights, claims and privileges" of Anita against Kinsey and his professional corporation "to the extent of

the payments made by or on behalf of Kinsey and any money, property, or interests in property recovered from Kinsey pursuant to the final judgment entered" in Anita's action against Kinsey, "for all sums paid by this agreement to the plaintiff as a share of its profits as provided, in excess of a sum equal to the amount of the final judgment less such payments...."

Kinsey asserts that Anita's settlement with the Bank provides a basis for relieving him from the judgment because it effectively allows Anita a double recovery. At the very least, Kinsey maintains, he should be entitled to a reduction of damages. The trial court denied the Rule 60(b) motion, reasoning:

> "The case of Bjorgen v. First National Bank, although containing many factual similarities, has to do with the attachment process of the bank, the amount paid for the property which should have been turned over to Anita Bjorgen in addition to some of the actions taken by the bank during the course of the proceedings. The issues therein are substantially different from the issues involved in the case before the Court. Although it may be true that there are overlapping areas, the Court does not find that the interests of justice require that this matter be set aside because of the subsequent agreement reached in that case. Each of the parties was aware that the corresponding case was progressing through the courts. Neither of the defendants asked that they be joined in the other actions as indispensable parties, nor did either ask that the matter be dismissed since there was a lawsuit pending which asked for the same relief.

> "The Court is of the opinion that the actions are not duplicitous and based upon that, the motion of the defendant for relief from the judgment is in all things denied."

■ Rule 60(b)(v) allows the court to relieve a party from a final judgment if "the judgment has been satisfied, released, or discharged, ... or it is no longer equitable that the judgment should have pro-

spective application." The movant has the burden of establishing sufficient grounds for disturbing the finality of a judgment. *Avco Financial Services v. Schroeder,* 318 N.W.2d 910, 912 (N.D.1982). The trial court must exercise sound discretion in deciding whether the movant's reasons are sufficient to set aside the judgment. *Matter of Estate of Hansen,* 458 N.W.2d 264, 268 (N.D.1990). A trial court's decision on a Rule 60(b) motion will not be disturbed on appeal absent an abuse of discretion. *Matter of Estate of Hansen, supra.* A trial court abuses its discretion if it acts in an unreasonable, arbitrary, or unconscionable manner. *Avco Financial Services v. Schroeder, supra.*

■ Kinsey has failed to meet his burden of establishing not only that the trial court abused its discretion but that Anita's settlement with the Bank results in Anita receiving a double recovery. The materials submitted to the trial court show little more than that Anita settled an independent action against the Bank. Kinsey's assertion of double recovery is not supported by any specific evidence detailing how a double recovery has occurred through the settlement agreement. Under these circumstances, we cannot say that the trial court abused its discretion in denying the Rule 60(b) motion.

## PUNITIVE DAMAGES

In her cross-appeal, Anita asserts that the trial court erred in disallowing the $100,000 in punitive damages awarded by the jury. The trial court reasoned that allowing both treble damages under § 27–13–08, N.D.C.C., and punitive damages would result in a duplicative recovery.

■ Although cases have reached us in which the trial court has awarded both punitive damages and treble damages under § 27–13–08 [*see Olson v. Fraase,* 421 N.W.2d 820 (N.D.1988)], we have not addressed whether allowing recovery of both awards is proper. We agree with Kinsey and the trial court that an award of both treble damages and punitive damages for the same acts amounts to a double recovery or an excessive penalty. The general

rule is explained in 22 Am.Jur.2d *Damages* § 817, at p. 864 (1988):

"An award of punitive damages resulting from an act that may also result in liability for multiple damages is not allowed, for it would result in a double recovery for one wrongful act, even though it may not be necessary to establish willfulness or maliciousness as an element of the cause of action for statutory damages. It has been said that the imposition of two penalties for the same act violates basic fairness and thus due process of law, even though the theories behind the causes of action differ." [Footnotes omitted.]

*See also Stoner v. Houston,* 265 Ark. 928, 582 S.W.2d 28, 30–31 (1979); *Bill Terry's Inc. v. Atlantic Motor Sales,* 409 So.2d 507, 509 (Fla.Ct.App.1982); *His World, Inc. v. Cleto M., Inc.,* 250 Pa.Super. 293, 378 A.2d 943, 947 (1977); *John Mohr & Sons, Inc. v. Jahnke,* 55 Wis.2d 402, 198 N.W.2d 363, 367 (1972).

We therefore conclude that the trial court did not err in disallowing the award of punitive damages.

Accordingly, the judgment and post-trial orders [2] are affirmed.

ERICKSTAD, C.J., and MESCHKE, J., and VERNON R. PEDERSON, Surrogate Judge, concur.

LEVINE, J., concurs specially and files opinion.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of VANDE WALLE, J., disqualified.

LEVINE, Justice, concurring specially.

On appeal, Kinsey argues that Bjorgen's settlement with the Bank allows her a double recovery. However, he does not support that argument with evidence or cogent argument. I, therefore, agree with the majority that Kinsey, having provided us with no references to the record and no persuasive reasoning on this issue, has failed to establish an abuse of discretion on the part of the trial court in denying Kinsey's motion for relief from the judgment.

I, therefore, concur in the majority opinion.

**2.** In view of our disposition of the issues on the appeal from the judgment entered on the jury verdict, we conclude that the trial court did not abuse its discretion in denying the post-trial motions for judgment notwithstanding the verdict and, in the alternative, for a new trial. *See Dewey v. Lutz,* 462 N.W.2d 435, 445 (N.D.1990).