2004 ND 188

**Roland C. RIEMERS, Plaintiff and Appellant**

v.

**Thomas OMDAHL and Steve Simonson, Defendants and Appellees.**

No. 20040099.

Supreme Court of North Dakota.

Oct. 12, 2004.

Roland C. Riemers (pro se), Grand Forks, plaintiff and appellant, submitted on brief.

Patrick J. Maddock and Gerad C. Paul, Camrud, Maddock, Olson & Larson, Ltd., Grand Forks, for defendants and appellees, submitted on brief.

MARING, Justice.

[¶ 1]   Roland C. Riemers appealed from a summary judgment dismissing his legal malpractice action against Steve Simonson and Thomas Omdahl.  We hold Riemers' malpractice claims are barred by the statute of limitations, and we affirm.

I

[¶ 2]   Simonson worked as a lawyer at Omdahl's law firm until October 2000.  In March 1999, Simonson helped prepare a premarital agreement for Riemers and Jenese Peters–Riemers.  In March 2000, Riemers retained Simonson to defend him against an aggravated assault charge stemming from Riemers' altercation with Peters–Riemers.  Riemers subsequently pled guilty to simple assault in October 2000.  In May 2001, in Peters–Riemers' divorce action against Riemers, a district court judge declared the premarital agreement invalid and, based in part on Riemers' guilty plea to simple assault, concluded Riemers had a pattern of inflicting domestic violence upon Peters–Riemers.  A judgment was entered in the divorce action in June 2001, and we affirmed the judgment in *Peters–Riemers v. Riemers*, 2002 ND 72, ¶¶ 1, 31, 644 N.W.2d 197, *cert. denied* 537 U.S. 1195, 123 S.Ct. 1252, 154 L.Ed.2d 1031 (2003).

[¶ 3]   By a complaint dated February 12, 2003, Riemers attempted to sue Simonson and his employer, Omdahl, for legal malpractice.  The district court dismissed that action without prejudice, concluding Riemers had failed to properly serve process on Simonson and Omdahl.  On October 31, 2003, Riemers commenced this legal malpractice action against Simonson and Omdahl, alleging they were negligent in advising him about the premarital agreement and in advising and defending him on the assault charge.  Simonson and Omdahl moved for summary judgment, asserting Riemers' action was barred by the statute of limitations.  The district court concluded Riemers' claims were barred by the applicable statute of limitations and granted summary judgment dismissing Riemers' action.

## II

[¶ 4] Riemers argues the district court erred in granting Simonson and Omdahl summary judgment. In *Zuger v. State*, 2004 ND 16, ¶¶ 7–8, 673 N.W.2d 615 (citations omitted), we outlined our standard of review for summary judgment:

Summary judgment is a procedural device for promptly disposing of a lawsuit without a trial if there are no genuine issues of material fact or inferences which can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. "Whether summary judgment was properly granted is 'a question of law which we review de novo on the entire record.'" On appeal, this Court decides if the information available to the trial court precluded the existence of a genuine issue of material fact and entitled the moving party to summary judgment as a matter of law. Summary judgment is appropriate against parties who fail to establish the existence of a factual dispute on an essential element of a claim on which they will bear the burden of proof at trial.

A party resisting a motion for summary judgment may not simply rely upon the pleadings or upon unsupported, conclusory allegations. "Factual assertions in a brief do not raise an issue of material fact satisfying Rule 56(e)." "Nor may a party merely reassert the allegations in his pleadings in order to defeat a summary judgment motion."

The resisting party must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact.

In summary judgment proceedings, neither the trial court nor the appellate court has any obligation, duty, or responsibility to search the record for evidence opposing the motion for summary judgment. The opposing party must also explain the connection between the factual assertions and the legal theories in the case, and cannot leave to the court the chore of divining what facts are relevant or why facts are relevant, let alone material, to the claim for relief.

Mere speculation is not enough to defeat a motion for summary judgment, and a scintilla of evidence is not sufficient to support a claim. If no pertinent evidence on an essential element is presented to the trial court in resistance to a motion for summary judgment, it is presumed that no such evidence exists.

## III

[¶ 5] Riemers argues a plaintiff's knowledge of the accrual of a cause of action is a question of fact, which is not appropriate for summary judgment. He claims a reasonable person would assume that when an injustice was done him in the lower court in his divorce action, it would be corrected in a higher court. He claims, as a pro se litigant, he had a "reasonable person understanding that he really suffered no financial loss until" this Court's May 2002, decision in his appeal. He thus claims the commencement of his action in October 2003, was within the two-year statute of limitations for legal malpractice actions.

[¶ 6] Under N.D.C.C. § 28–01–18(3), a legal malpractice action must be commenced within two years after the cause of action accrues. *Wall v. Lewis*, 393 N.W.2d 758, 761 (N.D.1986); *Binstock v.*

*Tschider,* 374 N.W.2d 81, 84 (N.D.1985). We have adopted the discovery rule for legal malpractice actions, which contemplates that the statute of limitations begins to run when the plaintiff knows, or with reasonable diligence should know, of the injury, its cause, and the defendant's possible negligence. *Wall,* at 761. The discovery rule focuses on whether the plaintiff has been apprised of facts which would place a reasonable person on notice that a potential claim exists, and it prevents the injustice of barring a claim before the plaintiff reasonably could be aware of its existence. *Id.* The discovery rule employs an objective standard of knowledge, and a plaintiff need not be subjectively convinced of the injury and that the injury was caused by the defendant's negligence. *Id.*

▬ [¶ 7] Under the discovery rule, the statute of limitations does not begin to run until the plaintiff has incurred some injury or damage. *Larson v. Norkot Mfg., Inc.,* 2002 ND 175, ¶ 10, 653 N.W.2d 33 (citing *Wall v. Lewis,* 366 N.W.2d 471, 473 (N.D.1985)). It is not necessary for the plaintiff to fully appreciate the potential liability, or even be convinced of an injury; the objective standard requires only that the plaintiff be aware of facts that would place a reasonable person on notice that a potential claim exists. *Larson v. Norkot Mfg., Inc.,* 2001 ND 103, ¶ 13, 627 N.W.2d 386. In *Wall,* 366 N.W.2d at 473 (quoting *Budd v. Nixen,* 6 Cal.3d 195, 98 Cal.Rptr. 849, 491 P.2d 433, 436–37 (1971)), we explained:

> ... until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice. Prosser states the proposition succinctly, 'It follows that the statute of limitations does not begin to run against a negligence action until some damage has occurred.'

(Prosser, Law of Torts (4th ed. 1971), § 30 at p. 144.)

> The cause of action arises, however, before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence.... Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue.

> Indeed, once having discovered his attorney's negligence and having suffered some damage, the client must institute his action within the time prescribed in the statute of limitations or he will be barred from thereafter complaining of his attorney's conduct.

*See also Larson,* 2002 ND 175, ¶ 10, 653 N.W.2d 33.

▬ [¶ 8] Under the discovery rule, a plaintiff's knowledge is ordinarily a question of fact, and summary judgment is rarely appropriate on the issue of when the plaintiff should have discovered there was a potential malpractice claim. *Duncklee v. Wills,* 542 N.W.2d 739, 742 (N.D. 1996). However, issues of fact may become issues of law if reasonable persons could reach only one conclusion from the facts, *see Twogood v. Wentz,* 2001 ND 167, ¶ 10, 634 N.W.2d 514, and a plaintiff's knowledge of a potential claim is an issue of law if the evidence is such that reasonable minds could draw but one conclusion from the evidence. *Wall,* 393 N.W.2d at 761.

▬ [¶ 9] Here, the defendants' alleged negligent acts, the advice on the premarital agreement in March 1999 and the advice and defense in the criminal case in 2000, occurred more than two years before Riemers commenced this action in October 2003. Riemers claims, however, there are disputed factual issues about when he discovered his injury. He claims he had a reasonable expectation this Court

would overturn the divorce court's decision, and to the best of his knowledge and belief, he suffered no irreparable harm until this Court's decision in May 2002. His affidavit in opposition to the motion for summary judgment states:

1. That Steve Simonson, and [sic] employee of Thomas Omdahl, was employed by me about March of 1999 to do a premarital agreement, and later to defend me on a domestic assault charge in March 2000.

2. At no time following those dates have either Simonson &/or Omdahl notified me or any court that they have discontinued their representation of me on any of these matters.

3. That following those dates, I had from time to time ongoing contacts with Simonson &/or Omdahl in regards to those matters, or matters directly or indirectly relating to those matters, and I believe the last contact was sometime in 2002.

4. To the best of my knowledge and/or belief, Simonson &/or Omdahl professional legal services were only definitely terminated when I filed my first complaint against them on 12 February 2003.

5. Although the Traill County District Court ruled my Premarital Agreement was unenforceable in May of 2001, I immediately appealed said ruling to the North Dakota Supreme Court and I had reasonable expectation that the Supreme Court would surely overturn such a ruling. A ruling that was contrary to law and fact. I believe my reasonable belief meets the reasonable person standard in that the average North Dakota citizen believes justice will be done on an appeal to the North Dakota Supreme Court and that contracts will be upheld.

6. To the best of my knowledge and belief, I suffered no ill-repairable [sic] harm from that belief until the 14 May 2002 judgment, which to my utter shock and surprise, upheld the draconian Traill County Court ruling. *Peters–Riemers v. Riemers*, 2002 ND 72, 644 N.W.2d 197.

7. To my information and belief, up till the May 2002 Supreme Court decision, I had utter faith in the professional judgment and guidance of the defendants, and thus had no reason to consider action against them for malpractice.

8. In regards to the Alford plea, it played only a minor part in the divorce trial, but in subsequent legal actions over the past two years I have repeatedly been hammered and injured (example: Supreme Court appeals of Riemers v. Michael Crocker and Traill County, 20030317 and 20030318) with the fact that I made an unqualified guilty plea to the assault charge and therefore admitted guilt to domestic abuse, and in 2002 even led to the Grand Forks Herald publicly declaring that I was a "wife beater."

9. Following the 6 October 2000 Alford plea, I did from time to time consult with Simonson &/or Omdahl during the year of probation either in person or by phone, and I considered that they were passively representing me on that criminal issue through 2001.

[¶ 10] In *Jacobsen v. Haugen*, 529 N.W.2d 882, 885 (N.D.1995), we held the entry of a money judgment was sufficient injury to sustain a legal malpractice action and we rejected an argument that the statute of limitations for bringing a legal malpractice action was tolled until after the appellate process was completed. In

*Jacobsen,* at 885, we concluded the plaintiffs knew of their injury, its cause, and the attorney's possible negligence more than two years before they sued the attorney, and we said "[m]erely because a judgment might be reversed on appeal does not justify extending the statute of limitations until an appeal is completed." We indicated " 'an injury does not disappear or become suspended while a more final adjudication of the result is sought,' " and we joined those courts that have concluded a cause of action for presently identifiable damages is not tolled pending appeal. *Id.* at 885–86 (quoting 2 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 18.11, p. 45 (3d ed.) (1993 pocket part)).

[¶ 11] Although Riemers claims *Jacobsen* is "plain and simply, bad law," we adhere to that decision. We also reject Riemers' claim there is a higher reasonable person standard because he is not an attorney. The reasonable person standard contemplates an ordinary lay person with no special skill or learning. *See Anderson v. North Dakota Workers Compensation Bureau,* 553 N.W.2d 496, 499 (N.D.1996). We conclude reasonable persons could not disagree that Riemers knew, or with reasonable diligence should have known, of any alleged malpractice by the defendants and any potential injury at least by the time the judgment was entered against him in the divorce action in June 2001. Riemers commenced this action against Simonson and Omdahl in October 2003, and it was therefore commenced outside the two-year statute of limitations for legal malpractice actions.

[¶ 12] Riemers nevertheless argues that because Simonson and Omdahl did not terminate their representation of him until February 12, 2003, when he initially attempted to commence his malpractice action against them, his action for malpractice commenced on October 31, 2003, was within the applicable two-year statute of limitations. He argues Simonson and Omdahl failed to follow the procedure for termination of representation in N.D.R. Prof. Conduct 1.16, and he claims "from time to time [he] had brief consultations with the Defendants in regards to the divorce and criminal charge." He argues at no time before February 2003, did the defendants notify him or the courts that they no longer represented him, and they continuously represented him.

[¶ 13] We have adopted the continuous representation rule for legal malpractice actions, which tolls the statute of limitations or defers accrual of the cause of action while the attorney continues to represent the client and the representation relates to the same transaction or subject matter as the allegedly negligent acts. *Wall,* 393 N.W.2d at 762–63. *See also Jacobsen,* 529 N.W.2d at 885; *Bjorgen v. Kinsey,* 466 N.W.2d 553, 557–58 (N.D. 1991); *Binstock,* 374 N.W.2d at 85. *See generally* 3 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 22.13 (5th ed. 2000). The continuous representation rule protects the integrity of the attorney-client relationship and affords the attorney an opportunity to remedy an error, or to establish that there has been no error, while simultaneously preventing the attorney from defeating a client's cause of action through delay. *Wall,* at 763. The continuous representation rule preserves the attorney-client relationship by guaranteeing the client that the attorney will put forth a better effort to preserve the client's interests and avoids speculative litigation by obviating the need for a lawsuit by the client before the attorney attempts to avoid any damage to the client's interest. *Id.* The continuous representation rule requires any subsequent representation to relate to the same transaction or subject matter as the allegedly negligent acts.

*Wall,* 393 N.W.2d at 762; *Binstock,* 374 N.W.2d at 85. Thus, in *Binstock,* at 85, we acknowledged that the attorney in that case had subsequently represented the client on other matters, but we concluded the client had not drawn our attention to any evidence in the record raising a disputed issue of fact about whether the attorney continued to represent the client with regard to the allegedly negligent drafting of an option contract. We held summary judgment was appropriate because the statute of limitations barred the client's action. *Id.*

[¶ 14] In *Wall,* 393 N.W.2d at 763–64, we considered an issue about the termination of representation in the context of the continuous representation rule. We recognized that in a different context we had implied that the determination of the date of termination of an attorney's representation of a client is generally a question of fact. *Id.* at 763 (citing *Thomas v. Thomas,* 382 N.W.2d 639, 643 (N.D.1986)). We also recognized other courts have generally treated the termination of representation under the continuous representation rule as a question of fact. *Wall,* at 763. In *Wall,* at 763–65, the record on appeal was insufficient to resolve the issues about continuing representation and termination of the attorney-client relationship, and in view of the party's concessions that additional discovery would resolve the issues, we remanded for development of the record.

[¶ 15] One commentator has recognized that ordinarily an attorney's representation of a client does not terminate until the agreed tasks or events have occurred, the client consents to termination, or a court grants an application by counsel to withdraw. 3 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* at § 22.13, p. 441. There is no bright-line rule for determining when representation ends, because

the particular circumstances of each case must be considered and the termination of representation may be implied from the evidence. *Id.* at p. 443.

[¶ 16] Riemers has not drawn our attention to any evidence indicating the defendants continued to represent him after the premarital agreement was signed and he pled guilty to simple assault. Riemers appeared pro se in this Court in his divorce action, *Riemers,* 2002 ND 72, ¶ 4, 644 N.W.2d 197, and he has cited nothing in this record specifically indicating Simonson and Omdahl continued to represent him on the premarital agreement or the criminal charge. Riemers' conclusory allegations that "from time to time [he had] ongoing contacts with Simonson &/or Omdahl in regards to [the premarital agreement and the criminal] matters, or matters directly or indirectly relating to those matters," lack sufficient specificity to raise an issue of fact that the defendants continued to represent Riemers after the premarital agreement was signed in March 1999, and after the criminal matter ended with a guilty plea in October 2000. Mere speculation about ongoing contacts is not sufficient to defeat a motion for summary judgment. *See Thomas,* 382 N.W.2d at 642–43 (stating absent other factors indicating an ongoing attorney-client relationship, there is no presumption of continuing representation by an attorney in a divorce matter after entry of the original judgment and expiration of the time for appeal). Riemers employed Simonson and Omdahl to advise him on a premarital agreement and to advise and defend him in the criminal case. Those agreed tasks were completed when the premarital agreement was signed and when Riemers pled guilty to the criminal charge, and Riemers has not drawn our attention to any specific evidence to indicate when he may have thereafter contacted Simonson or Omdahl in regards to those matters. *See Binstock,* 374 N.W.2d

at 85 (holding that representation of client on other matters insufficient to raise factual dispute that representation relates to same transaction or subject matter as allegedly negligent acts). We conclude Riemers' conclusory assertions are insufficient to raise a factual issue under the continuous representation rule.

[¶ 17] Riemers' reliance on N.D.R. Prof. Conduct 1.16 to show continuous representation is misplaced. That rule provides guidance for when an attorney may not represent a client, or must withdraw from representation. The issue in this case is not whether the defendants were subject to rules for formal withdrawal, but whether the defendants continued to represent Riemers.

[¶ 18] We conclude Riemers has failed to offer specific facts supporting his conclusory assertion that Simonson and Omdahl continue to represent him in connection with the premarital agreement and the criminal charge. We conclude reasonable minds could reach only one conclusion that the defendants did not continuously represent Riemers after the premarital agreement was signed and after Riemers pled guilty to the criminal charges. We therefore conclude the continuous representation rule does not toll the running of the statute of limitations for Riemers' malpractice action against Simonson and Omdahl.

### IV

[¶ 19] Riemers argues his attempted malpractice action against these defendants in February 2003, was dismissed "without prejudice," and the application of the statute of limitations to this later action would deny him his state constitutional right to a remedy for his injury. Riemers briefly raised this issue in the district court in his brief opposing the defendants' motion for summary judgment.

However, in both the district court and this Court, Riemers has not supported his state constitutional claims with any citations to relevant legal authority. We have said an argument may be meritless without supportive reasoning or citation to relevant authority, and a party waives an issue by not providing supporting argument. *Interest of T.T.*, 2004 ND 138, ¶ 20, 681 N.W.2d 779; *Haley v. Dennis*, 2004 ND 96, ¶ 19, 679 N.W.2d 263. We conclude Riemers' argument on this issue is meritless.

### V

[¶ 20] Riemers argues the doctrine of equitable tolling tolls the statute of limitations on his claims against Simonson and Omdahl.

[¶ 21] Riemers did not raise this issue in the district court and is precluded from raising it for the first time on appeal. *Gange v. Clerk of Burleigh County Dist. Court*, 429 N.W.2d 429, 432 n. 3 (N.D. 1988). Moreover, this Court has never adopted the doctrine of equitable tolling. *See Kimball v. Landeis*, 2002 ND 162, ¶ 24, 652 N.W.2d 330; *Reid v. Cuprum SA, de C.U.*, 2000 ND 108, ¶ 16, 611 N.W.2d 187. In *Reid*, at ¶ 10, we cited *Addison v. State*, 21 Cal.3d 313, 146 Cal. Rptr. 224, 578 P.2d 941, 943–44 (1978), for the California formulation for equitable tolling, which requires a plaintiff to satisfy three criteria for application of the doctrine: 1) timely notice, 2) lack of prejudice to the defendant, and 3) reasonable and good-faith conduct by the plaintiff.

[¶ 22] In *Reid*, 2000 ND 108, ¶ 15, 611 N.W.2d 187, we said "*Addison* and subsequent California decisions have said the equitable tolling doctrine operates to protect the claim of a plaintiff who has several legal remedies and, reasonably and in good faith, pursues one of the remedies thereby tolling the limitation for the other reme-

dies." We said the plaintiffs' failure to commence their action against the defendant, a foreign corporation with no registered agent in North Dakota and its principal place of business in Mexico, within the statute of limitations was not the result of their timely pursuit of one of several other available legal remedies which may have tolled the statute of limitations for their action. *Id.* at ¶ 16. Rather, we concluded the plaintiffs' failure to commence their action within the statute of limitations resulted from their failure to effectuate timely service of process on the defendant in Mexico. *Id.* We concluded the plaintiffs' failure was the result of their imprudent legal practice, and their conduct was not reasonable. *Id.*

[¶ 23] Even if we were to adopt the equitable tolling doctrine in this case, Riemers' failure to commence his action against the defendants within the statute of limitations was not the result of his timely pursuit of one of several other available legal remedies which may have tolled the statute of limitations. Rather, as in *Reid,* 2000 ND 108, ¶ 16, 611 N.W.2d 187, Riemers' failure to commence his action within the statute of limitations resulted from his failure to effectuate timely service of process on the defendants. We therefore conclude the equitable tolling doctrine would not apply to Riemers' claims.

## VI

[¶ 24] We affirm the summary judgment.

[¶ 25] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.